ASA REDINGTON AND AL. *versus* WILLIAM A. FRYE.

In order to enforce a lien for services on logs, it is necessary that the property on which the labor was performed should be specifically inserted in the writ, as the property to be attached, and the officer therein ordered to attach it, instead of the property of the defendant, as is usual in all writs of attachment.

An officer cannot regard the averments in the declaration or endorsement of an attorney on the writ, when inconsistent with the express commands to him within directed.

Under the statute of 1848, chap. 72, the proceedings in regard to the debtor are *in personam;* but so far as the general owner of the property is concerned, when the laborer has contracted with another person the proceedings are strictly *in rem.*

Until the statute of 1855, chap. 144, the *res* could not be legally represented in court.

Redington and al. *v.* Frye.

It is necessary, in order to preserve the lien on logs attached, that the own-
ers should have due notice of the pendency of the suit.

The act of 1848, and the additional act of 1855 have materially changed the
law of lien on lumber.

REPORTED by HATHAWAY, J.

This, and the case of Ephraim Hamilton v. Hiram Crom-
mett, were submitted to a referee under the annexed agree-
ment, and in his reports, (also annexed,) the referee states
certain questions of law, and the two cases are now sub-
mitted to the full court for the decision of those questions.

Upon said agreement and reports, the court are to render
such judgment in these two cases, as law and justice may
require.

This memorandum of agreement, made October 31, 1856,
between William A. Frye, on one part, and Joseph M.
Moore and Asa Redington on the second part, witnesseth.

That said parties agree that the following named suits,
pending in the Supreme Judicial Court for Penobscot coun-
ty, to wit: William A. Frye v. Joseph M. Moore; Moore
& Redington v. William A. Frye; Martin N. Merrill (of
whom said Frye is assignee) v. Moore & Redington, shall be
referred to Hon. Jonas Cutting, to be determined upon by
legal principles, whose decision shall be final and conclusive,
in the matters embraced in said suits, upon the parties
thereto.

And that in another suit pending in said court, wherein
Ephraim Hamilton (of whom said Frye is assignee,) is plain-
tiff, and Hiram Crommett is defendant, in which the logs of
Moore & Redington were attached on a claim of lien, for
labor thereon, by said Hamilton, under the statute, and in
which suit the log owners having had notice, said Moore &
Redington have appeared specially, the same referee shall
determine, upon legal principles, whether any lien existed,
and whether it had been lost, and whether this writ, attach-
ment and suit were valid and effectual, to perfect and secure
such lien, and if he shall determine that it did exist and has

been secured and perfected, and not lost thus far, by said suit, writ and attachment, and without this reference, could be enforced upon said logs, then he shall determine and award what sum said lien existed for, and how much said Moore & Redington shall pay, if anything, in discharge thereof, and his determination shall be final and conclusive thereon upon the parties.

Said referee shall make his award in writing in each of said suits, having power to award costs for either party, and to apportion the costs of reference among said suits as he shall deem proper, and return his award to court at said next term, and said suits shall stand continued, and at said term be disposed of in accordance with the several awards.

All depositions taken in the above named cases to be used at the hearing.

W. A. FRYE,
JOS. M. MOORE,
ASA REDINGTON.
By *Jos. M. Moore.*

In the case of Asa Redington and al. v. William A. Frye.

Pursuant to the agreement of the parties, as contained in their agreement of October 31, A. D. 1856, to which reference may be had, the undersigned referee, named therein, having duly notified the parties, met them at the office of A. Walker, in Newport, on the twelfth day of December, A. D. 1856, and heard their several pleas, proofs and allegations, and maturely considered the same, do award and determine, and this is my final award and determination in the premises, that the said plaintiffs do recover of said defendant the sum of one hundred and five dollars, debt or damage, and their costs of reference, taxed at sixteen dollars and seven cents, and costs of court, to be taxed by the court.

Unless the full court shall determine that the law upon the facts hereinafter stated does not authorize a recovery by the plaintiffs in whole or in part as above stated, but does sustain the defence, in whole or in part, which facts are as follows, viz: The said defendant, as a constable of Newport,

duly authorized, in November, A. D., 1855, served four writs, returnable before Thomas Clark, a justice of the peace, to wit: Farnsworth Lawrence v. Hiram Crommett; John Q. Brown v. Same; Humphrey Twombly v. Same; and Jeremiah Grindell v. Same; all founded on claims for personal labor in running logs for the defendant in those suits, and for which the several plaintiffs, in their several declarations, claimed to have a lien on the logs, then owned by the plaintiffs in this suit, who contracted with said Crommett to run said logs. The several writs commanded the officer to attach the property of the several defendants named therein, but not the logs in controversy, on which the labor had been performed, unless orders to that effect, endorsed on the back of the writ, and what appears in the declarations, might be so considered. On those writs the defendant, Frye, as constable aforesaid, attached and returned said logs in due form, except on the writ Brown v. Crommett the certificate left with the town clerk fixed the return day of the writ one week too early. The actions were duly returned before said magistrate, who rendered judgment and issued executions thereon, but no notice was given to the log owners of the pendency of said suits. And the defendant, as constable aforesaid, seasonably seized and sold said logs on said executions, and made his return thereon.

The questions presented to the court for their determination are:

1. Is it necessary, in order to enforce the lien for services, that the logs, on which the labor was performed, should be specifically inserted in the writ, as the property to be attached, and the officer therein ordered to attach them, instead of the property of the defendants, as is usual in all writs of attachment.

2. Is it necessary, in order to preserve such lien on logs so attached, that the log owners should have due and seasonable notice of the pendency of the suit as prescribed by law.

If the said court shall decide both of the aforesaid propo-

sitions in the negative, then the plaintiffs in this suit are not entitled to recover, but the defendant shall recover his costs of reference, taxed at three dollars and eighty-nine cents, and his costs of court, to be taxed by the court.

Provided, however, if the court shall come to the conclusion that in the suit Brown v. Crommett, the lien was lost by reason of the defect in the said certificate of the officer, and should otherwise decide in favor of the defendant, then the plaintiff shall recover only the sum of twenty-three dol-dollars and fifty cents, debt or damage, instead of the sum first mentioned, together with their costs of reference and of court, as before named. All the documents, such as the copies of the writs, executions, judgments and the officers' returns, and the writ and pleadings in this suit are made a part of this, my report, and may be referred to. All of which is respectfully submitted.

JONAS CUTTING, *Referee.*

·December 12, 1856.

In the case of Ephraim Hamilton v. Hiram Crommett.

The undersigned, appointed referee as by the agreement of the parties, dated October 31, 1856, appears, having duly notified the parties, met them at the office of A. Walker, in Newport, on this twelfth day of December, A. D. 1856, and having heard their several pleas, proofs and allegations, and maturely considered the same, do award and determine, and this is my final award and determination in the premises, that the said Hamilton do recover of the said Crommett the sum of fourteen dollars, debt or damages, and his costs of reference, taxed at five dollars and ninety-nine cents, and costs of court, not exceeding one fourth part of the above named debt or damage. All of which is respectfully submitted.

JONAS CUTTING, *Referee.*

December 12, 1856.

The decision of the question as to whether the plaintiff has a lien on the logs attached and returned on the writ in

this suit, will depend on the opinion of the full court, upon the first question presented for their consideration, in my report in the case of Redington and al. v. Frye.

JONAS CUTTING.

*Rowe & Bartlett*, counsel for Redington and al.

In order to make an attachment of any other property than that of a defendant in a writ valid, there must be a direction in the writ to the officer to attach such property.

" A writ is a mandatory precept, issued by the authority, and in the name of the state."

A writ of attachment is addressed to the officer. His power in executing it is derived from the mandates contained in it, and is limited to the doing of those acts which he is therein commanded to do. Any act beyond that is void. When commanded to attach the goods of the defendant only, and he returns that by virtue thereof he has attached certain property named, the validity of the attachment depends upon the question whether the property returned is the property of the defendant. No other question can arise, whatever the kind of property.

It is not enough that other property is liable to attachment on the claim declared on. An attachment of a defendant's property on a writ of summons, would not be valid, because his property was liable to be attached for the debt. Nor would a return that a trustee had been summoned on an ordinary writ of attachment, be valid. It is not enough, to render the act of an officer valid, that the law allows such a thing to be done; but it must be further shown that the officer had special power to do the acts, and when such power can be derived only from a direction to do the act, that such direction has been given.

The recital in the declaration that a plaintiff claims such a lien, and brings the suit to perfect it, cannot help the case. The declaration is no part of the writ, but merely an appendage to it, not containing directions for the officer, but information for the court and the opposite party. The officer's

power is derived from the precept alone. The authority and justification of attaching officers does not depend on the correctness or sufficiency of the declaration, fortunately for them.

The direction of the attorney on the back of the writ cannot help it. The officer's authority is not derived from such, but from the directions on the other side, under the seal of the court and signature of the magistrate. The only effect of such direction, by an attorney or party, is to limit and control the exercise of the power conferred by the writ, not enlarge it, or to confer new powers.

But the officer does not justify under any such directions. His return on each writ is "by virtue of the within writ;" that is, by virtue of the power conferred upon me by the within writ, and in obedience to the commands therein given in the name of the state, under the signature and seal of the magistrate, I have attached, &c. Had his return been, by virtue of the power conferred on me by, and in obedience to the directions of plaintiff's counsel, written on the back hereof, I have attached, &c., that would have presented the question.

2. The act of March 12, 1855, chap. 144, imperatively requires that notice shall be given to the log owners in all suits brought to enforce lien claims. Attachment on the lien claim is no longer sufficient to perfect the lien, but the parties setting it up must do a further act; must cause such notice of the pendency of their suit as the court shall order, to be given to the log owners; otherwise their lien is lost, and their judgment is good only against the defendant contractors; for this is the only provision the law makes for the owners to come in and contest the extent of the lien claim; and having made provision for their coming in, the judgment would be conclusive upon them, if they had due notice, a nullity, as to its effect upon their property, if they had not notice, since this act, it is clear that the extent of the lien claim cannot be inquired into in any other suit or proceeding.

3. The mistake in stating the return day in the certificate filed with the town clerk, is fatal, in the attachment on the writ of Brown v. Crommett.

To perfect and retain that attachment, Frye was bound, either to retain custody and possession of the property attached, or to file with the town clerk a certificate of, among other things, the court to which the writ was returnable. In this case he did neither. His certificate did not state the court to which the writ was returnable. R. S., chap. 114, sec. 39.

*G. W. Whitney and D. D. Stuart,* counsel for the plaintiffs.

CUTTING, J. This action was instituted for the alleged wrongful conversion of the plaintiff's property. The defendant justified as an officer, having attached on *mesne* process and sold on execution the property, in favor of certain individuals, to enforce liens for personal services rendered for one Hiram Crommett, who had sub-contracted with the plaintiffs in those suits to run the lumber. The action was referred, by a rule of court, and the referee has reported in favor of the plaintiffs, unless his findings constitute a legal defence, and two questions, as matters of law, are presented to the court for their determination.

1. " Is it necessary, in order to enforce the lien for services, that the logs, on which the labor was performed, should be specifically inserted in the writ, as the property to be attached, and the officer therein ordered to attach them, instead of the property of the defendant, as is usual in all writs of attachment?"

The lien was created by the statute of 1848, chap. 72, sec. 1, and is sought to be enforced by sec. 2; which provides that: "Any person having a lien as aforesaid may secure the same by attachment."

There is no pretence that the lumber was ever the property of Crommett, the defendant in the original suits, whose goods and estate only the officer in the writs was com-

38

manded to attach. Suppose those writs had not only directed the officer to attach the goods and estate of the defendant, but for want thereof to take his body; with equal propriety it might be contended that the bodies of the present plaintiffs could have been taken, as that their property could have been attached. The officer had no concern with the averments in the declaration, or with endorsements of an attorney on the writ, when inconsistent with the express commands to him within directed. If a contrary doctrine should prevail, the people could not be said to be " secure in their persons and possessions from all unreasonable seizures," for then *meum* and *teum* would become convertible terms, at the will and pleasure of the officer.

What then, it may be asked, would be the laborer's remedy, inasmuch as his claim can only be enforced when he resorts to the provisions of the statute by a suit and judgment against his employer, to be secured only by an attachment? This question has already been answered in the case of Bicknell v. Trickey, 34 Maine R., 281, where the court say: " The proceedings under this statute (1848, chap. 72) are therefore to be viewed in a double aspect. So far as the debtor is concerned they are *in personam*, and, as against him, the plaintiff may insert any and all claims which by law can be joined. So far as regards the general owner of the property, and against whom the laborer has no legal claim, when the person with whom he has contracted is other than the owner of the lumber, the proceedings are strictly *in rem.*"

Now, proceedings *in personam* authorize, on *mesne* process, attachment of the property of the defendant to respond the exigency of the writ and satisfy the judgment; whereas, proceedings *in rem* only authorize the attachment of the *thing*, and in that particular are in the nature of a libel, and in suits where the defendant is both the debtor and owner of the property on which a lien is attempted to be enforced, ordinarily no difficulty arises in embracing both proceedings in the same process. And the embarrassment has arisen in

a great measure by an erroneous idea that the remedy of the contractor and his sub-contractor is the same; whereas the former has his security on the goods and estate of his debtor, that is, *in personam*, as well as on the specific property benefited by his labor, which may be *in rem*, and after judgment it is optional with the creditor on which species of property he will levy his execution. In such cases an attachment of the debtor's goods and estate might include the property on which the services were bestowed, without any other specific directions to the officer in the writ, for indeed, such property would belong to the debtor, subject only to the lien. Perhaps when such property has been transferred by the debtor, after the contract, and before the institution of the suit, a specific insertion in the writ would become necessary. But a sub-contractor has no claim against the *owner* of the property—his claim is only against the *property* (*in rem*), and the person and property of his employer (*in personam*). So that in such suits two classes of respondents become interested, viz: the contracting debtor and the *thing* specifically attached, in which the former may appear and defend against the claim on his person and property, and the latter, by its owner, against all lien claims.

But heretofore, and until the enactment of the statute of 1855, chap. 144, the *res* could not be legally represented in court. This act provides, that "In all suits brought to enforce the lien given by the act to which this is additional, such notice shall be given, to the owners of the lumber, as the court shall order, and the owner may come into court and defend such suit." The construction of this statute raises the *second* question presented in the report, viz: "Is it necessary, in order to preserve the lien on logs so attached, that the log owners should have due and seasonable notice of the pendency of the suit, as prescribed by law?"

We have seen that, prior to this statute, a judgment might be recovered on a lien claim in an action wherein the interest of a third party had not been represented; and inasmuch

as the execution might be satisfied by the property of the judgment debtor without resort to that of such third party, no injury might be sustained by him. But whenever his property has been taken, such third party would not be precluded by such judgment, (it being *inter alios acta*,) from having his day in court, and in a suit against the officer he has heretofore been permitted to show that such judgment did not embrace a lien claim to its full extent, and to controvert any facts tending to establish the lien. Thus suits were unnecessarily multiplied, and an innocent officer not unfrequently subjected to expensive litigation in settling the rights of parties, which might as well have been settled in the original suit. Hence the necessity of the statute of 1855, making it imperative on the party attaching property owned by a third person, to give such owner due notice of the pendency of the suit, and an opportunity to defend against it. Having appeared and defended, or having had the notice and neglected, the lien judgment is conclusive upon him and his property, to which the lien was alleged to have attached.

. The act, then, of 1848, and the additional act of 1855, creating a lien on certain lumber, and prescribing the mode of perfecting and enforcing it, have materially changed the law of lien on such property. Since those enactments, so far as it regards the party other than the defendant, the suit is substantially a proceeding *in rem*, and is in the nature of a libel against the lumber of a third party, who may legally come into court and " defend such suit." What suit? Certainly the suit on which his logs have been seized. How defend? Most assuredly, like any other adverse party, by controverting every material allegation in the plaintiff's writ, such as personal services performed on the lumber specifically described, and so as readily to be identified, and any other averments which may be necessary to bring the lien claim within the statute; for, in the language of the court in the case before cited, " the identity of claim and of property, must co-exist, and must be traceable till the fruits of the judgment have been obtained by a satisfaction of the

execution. The identity of the property must be established, else the lien cannot attach; the labor must be shown to have been done upon the specific property seized, for provision is made for nothing else." Such facts, therefore, it is incumbent on the plaintiff both to allege and prove before he can recover a judgment, the execution of which may be satisfied by the sale of the property claimed. If not from the declaration in the writ, how is the court to be informed that it is a suit in which it is necessary for the owners to be summoned, and what order to issue and on whom to be served? Whatever it may be essential for the plaintiff to allege and prove in order to perfect his lien judgment, it will be competent for the owner to controvert and disprove. And, before the statute of 1855, it may be questionable how far a party had the constitutional privilege of seizing and confiscating the property of another, in violation of private rights, without an opportunity to be heard. Marsh v. Flint, 27 Maine R., 479.

But in such a suit, since there may be two parties interested in the defence, viz: the debtor and the log owner, a question may arise as to the mode of conducting it. When that question is duly presented it may require an answer. In the present case the plaintiffs, who were such owners, had no opportunity to appear; the statute of 1855 was violated, and consequently the pretended lien was vacated, and the judgments recovered under such circumstances, and the executions issued thereon, were no protection to the officer. The questions proposed to the court being answered in the affirmative, judgment must be rendered on the award in favor of the plaintiffs.