## JOHN HOLYOKE *versus* CHARLES D. GILMORE.

One, who had performed labor on masts, brought an action therefor, under c. 144 of the laws of 1855, and the masts were attached for his *lien* thereon. They were held by a creditor of the owner, as collateral security, and afterwards received by him, in payment of the debt for which he held them. The lien-claimant obtained judgment and execution in the ordinary mode, and, on the execution, the officer seized and sold the masts. In a suit by the creditor against the officer, *it was held:* —

*That* such judgment and execution conferred upon the officer no authority to take any property, but that of the judgment debtor.

*That*, in the suit of the lien-claimant against the original owner, the purchaser of the property was entitled to notice, without which his rights would not be affected by the judgment, unless he had actually waived his right to be notified.

*That* the owner was not estopped to claim the property by reason of his receipt to the officer who attached it on the writ, in the former suit, even though he might be in a suit by the officer against him for a breach of his contract in the non-delivery of it.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.

TRESPASS for taking four masts, by a deputy of the defendant, who is sheriff of the county of Penobscot. The writ is dated Sept. 4, 1857.

From the report, it appeared that plaintiff held the masts as collateral security, when they were attached, and afterwards took them from one Williamson for advances.

" The masts arrived in Brewer, in June, 1856, and were attached on the 3d day of July following, on a writ in the action of Largay *v.* Williamson. The count in the writ sets forth a lien-claim, stated in an account annexed. The direction in the writ was to attach goods and estate of said Williamson, especially masts and spars marked," &c.

The action was duly entered in court, and judgment in ordinary form was obtained at the next April term of the court, and execution issued in common form; and, within thirty days from the rendition of judgment, the masts were seized and sold on said execution.

Defendant introduced, subject to objection, testimony tend-

ing to show that Largay agreed with Williamson to do the work on the logs, and that the services were rendered.

Defendant also put in evidence a receipt, in common form, dated July 5, 1856, signed by plaintiff, and given to the officer attaching the masts on the writ in favor of Largay.

It also appeared that the plaintiff, at the time of the sale of the masts on the execution, claimed the property as his own. Also, that plaintiff requested an attorney to answer to said suit for Williamson.

*Peters*, for defendant : —

The only element wanting, to establish a good lien-claim, is a notice to the owner. This was waived by plaintiff, by his control of the action. He had all the advantages which he could have had by coming into court more formally.

But plaintiff was not an owner. His claim rested in contract. If he had any title, it was merely collateral; and his receipt to the officer discharged it.

He is estopped from claiming the property, as he made no claim of ownership to it when it was attached in the original suit, but gave the officer his receipt for it, as the property of Williamson. *Sawyer* v. *Mason*, 19 Maine, 49.

*Godfrey & Shaw*, for plaintiff.

The opinion of the Court was drawn up by

RICE, J. — Trespass for taking four masts. By the report of the case, it appears that the general property in the masts in controversy was originally in one Williamson, but they were held by the present plaintiff as collateral security for indebtedness from Williamson to him, and were subsequently received by him in payment for that indebtedness.

One Largay, who had performed labor upon the masts for Williamson, sued out a writ of attachment against said Williamson, and the masts were attached thereon, on the 3d day of July, 1856, by a deputy of the defendant, who is the sheriff of Penobscot county. The writ contained a count setting forth a lien-claim in an account annexed. The direction in the writ

was to attach goods and estate of said Williamson, especially masts and spars, marked, &c.

Judgment was obtained against said Williamson, in the ordinary form, at April term, 1857, and execution, also, in the ordinary form, issued thereon, and, within thirty days after judgment, the masts were seized and sold on that execution.

The plaintiff was not notified to come in and defend against the suit of Largay, as provided in c. 144 of statute of 1855. Nor do we find that the evidence shows that he waived his right to such notice.

That judgment and the execution issued thereon gave the officer no authority to take the property of the plaintiff. *Redington* v. *Frye*, 43 Maine, 578.

The plaintiff, on the 5th of July, 1856, receipted to the officer for the property attached on the writ of Largay v. Williamson, as having been attached as the property of Williamson.

The defendant now contends that the plaintiff is estopped from claiming that property, by reason of the admission in that receipt.

If he had been sued for the non-delivery of the property, when demanded upon the receipt, such might have been the result. This, however, was not done. On the contrary, the property, evidently, was returned to the party holding the receipt. The parties were thereby restored to their original condition. After this, the property was seized upon the execution and sold, notwithstanding the plaintiff, at the time of the sale, claimed the said masts as his own.

Under such circumstances, the defendant proceeded at his peril, and, not being protected by his precept, he became liable. According to the agreement, a default must be entered for $110, and interest from the time of taking, as damages.

*Defendant defaulted.*

TENNEY, C. J., APPLETON, CUTTING, and GOODENOW, J. J., concurred.