BRYANT *v*. WARREN.

51  213
58  551

A labored for B in cutting wood. B, having subsequently sold the wood to C, A, within sixty days after his labor was performed, intending to enforce his right of lien under Gen. Stats., chap. 125, section 14, brought an action of assumpsit against B to recover his wages,—and caused the wood in the hands of C to be attached on the writ against B. The writ (*A* v. *B*) contained only the ordinary precept, directing the officer to attach the goods or estate of the defendant, B. *Held*, that the attachment, not being authorized by the precept, was invalid; and that A's lien, not having been " secured by attachment," expired at the end of sixty days after the labor was performed.

TROVER, for lumber. Writ dated Aug. 6, 1869, and served Aug. 9, 1869.

From the report of a referee, the following facts appeared :

The land upon which the lumber was cut was owned by the wife of one Elijah L. Smith (holding it to her sole and separate use), subject to a mortgage to the plaintiff, Bryant, executed by said Smith and wife March 13, 1867, conditioned to secure notes signed by both Smith and his wife. The defendant, Warren, with the knowledge of Bryant, labored for said Elijah L. Smith in cutting and hauling this lumber, commencing Nov. 30, 1868, and ending March 15, 1869. Bryant assented to the cutting of the timber by the mortgagors. It was known to Bryant, at the time the labor was performed by Warren and afterwards, that neither Mr. nor Mrs. Smith had any property unincumbered to which Warren could look for security. April 2, 1869, Smith turned over the lumber to Bryant, and Bryant took possession of the same,—the price being agreed upon, but the measurement to be afterwards made, and the avails to be applied on the notes secured by said mortgage. May 12, 1869, Warren commenced an action of assumpsit against Smith to recover his pay for said labor. The declaration contained only the common counts. Warren testified before the referee that he brought that suit against Smith to enforce his lien under the statute ; and his specification in that action, filed Oct. 2, 1869, contained a statement to the same effect. The writ, *Warren* v. *Smith*, contained only the ordinary precept, commanding the officer to attach the goods or estate of the defendant in that action, Elijah L. Smith. May 13, 1869, an officer undertook to attach said lumber upon the writ *Warren* v. *Smith*. Subsequently to May 16, 1869, and prior to the commencement of the present action, such acts were done, under Warren's direction, in reference to the lumber, as would, unless justified by the attempted attachment, amount to a conversion.

The referee awarded damages to the plaintiff, Bryant, if the court should be of opinion that the action could be maintained.

*Plaintiff, pro se.*

*W. A. Flanders*, for the defendant.

SMITH, J.    It does not distinctly appear that Elijah L. Smith was authorized by his wife to employ Warren in chopping and hauling, or that he was authorized by her to make the transfer to Bryant on the 2d of April, 1869.    From the course of the arguments, however, we assume that he had such authority in each instance.    If this assumption is incorrect, the party aggrieved thereby may have the report recommitted to the referee for a direct finding on these points.

In the absence of evidence of a contrary intention, we hold that the transaction of April 2 vested the title to the lumber in Bryant, subject to any lien then existing in favor of Warren.    The referee does not find that the transfer to Bryant was in fraud of the creditors of the Smiths, or that it was made to defeat Warren's lien.    The general property in the lumber having thus passed to Bryant, the defendant's attempt to take the lumber from him was *prima facie* unjustifiable. But the defendant relies on his rights under the following statute : " Any person who labors at cutting, hauling, or drawing wood, bark, logs, or lumber, shall have a lien thereon for his personal services, which lien shall take precedence of all other claims, except liens on account of public taxes, to continue sixty days after the services are performed, and may be secured by attachment."    Gen. Statutes, ch. 125, sec. 14.    This statute contains no prohibition, either express or implied, against the transfer of the general property in the lumber from the original owner to a *bona fide* vendee.    A lien is not " founded on property."    In its very nature it " necessarily supposes the property to be in some other person, and not in him who sets up the right of lien."    See BULLER, J., in *Lickbarrow* v. *Mason*, 6 East 21, note, p. 26.    A lien, at common law, " is said to be a personal right to detain, in contradistinction to an interest in the property."—See SHAW, C. J., in *Doane* v. *Russell*, 3 Gray 382, p. 384.    Nor does this statutory lien, any more than the common law lien, work any change in the title, or suspend the power of alienation.    The right to secure the lien by attachment within the sixty days may be exercised, notwithstanding a change in the general ownership.    The property passes by a sale within the sixty days, although the purchaser takes it subject to a contingent liability to have it taken and applied, by appropriate legal process, to satisfy the debt for labor due from the vendor to the workman.    The situation of the property bears no analogy to the legal *status* of property transferred in fraud of creditors.    A fraudulent sale does not pass the title to the vendee as against existing creditors of the vendor.

Such creditors may treat the property as still belonging to the vendor ; and hence they may attach it as his property.    But the *bona fide* sale of this lumber stands on entirely different ground.

Prior to the enactment of the lien law, a *bona fide* sale of such property was unquestionably valid, and passed the title. The statute does not seek to prohibit or nullify such sales. It does, indeed, make the property of the vendee liable in certain contingencies to be taken to pay the debts of the vendor ; but it does not in any other manner affect his title. The statute does not say that the property shall be regarded as continuing in the vendor, but, rather, that it shall remain liable to be appropriated for the vendor's debts for a certain time after it has ceased to be his property. If these views are correct, the lumber, upon the 2d day of April, ceased to be the property of the Smiths, or either of them, and became the property of Bryant, notwithstanding Warren's lien. Assuming that Warren could still enforce his lien upon the lumber, it does not follow that he could enforce it by precisely the same form of process that would have been appropriate so long as the lumber remained the property of the Smiths.

Granting that the lumber, prior to April 2, could have been attached as the property of Elijah L. Smith, and that the right to secure the lien by attachment within sixty days was not defeated by the transfer to Bryant, the question still remains whether the subsequently attempted attachment of Bryant's lumber, on a writ against Smith, directing only an attachment of the property of Smith, was a valid " attachment " within the meaning of that term in the statute. An " attachment " imports a taking of property into the custody of an officer of the law by virtue of "a mandatory precept issued by the authority and in the name of the State." An officer's power to act under a writ is derived solely " from the mandates contained in it, and is limited to the doing of those acts which he is therein commanded to do." Under a precept to arrest the body of the defendant, A, the officer cannot arrest the body of a third person, B. No more can he attach the goods of B, under a precept directing only the attachment of the goods of A.

The writ, *Warren* v. *Smith*, did not contain a precept directing the attachment of specifically described lumber upon which Warren claimed a lien for a debt due from Smith, or from Smith and wife. It contained only the ordinary precept, commanding the attachment of the goods or estate of the defendant in that action. Under this precept, to attach the goods of Smith, the officer could not make a valid attachment of goods which had then become the property of Bryant. The fact that certain property is legally liable to attachment to secure a certain debt by no means establishes the validity of every form of process by which the creditor may attempt to secure his claim by attachment. "An attachment of a defendant's property on a writ of summons would not be valid, because his property was liable to be attached for the debt ; nor would a return that a trustee had been summoned on an ordinary writ of attachment be valid." It is not enough, to render the act of an officer valid in any given instance, that the law allows such a thing to be done under an appropriate precept ; it must further appear that he was acting under such a precept in that instance.

So far as Warren sought to recover a judgment against Smith for wages, his suit was a proceeding *in personam ;* but an attempt to subject the property of Bryant to the payment of Smith's debts must be in the nature of a proceeding *in rem.* If both objects can be attained in one suit, still this can only be done under a proper writ.

If Warren's specification in the action against Smith, which was filed subsequently to the attachment, had been originally incorporated in his declaration, that could not help his case. " The declaration is no part of the writ, but merely an appendage to it, not containing directions for the officer, but information for the court and the opposite party. The officer's power is derived from the precept alone. The authority and justification of attaching officers does not depend on the correctness or sufficiency of the declaration, fortunately for them."

It is suggested that the legislature could not have intended to require, in writs of attachment to secure liens, the use of any other precept than that prescribed in the General Statutes for writs of attachment. If this suggestion is well founded, one of two consequences must follow : either that no attachment to secure a lien can ever be made after a *bona fide* sale by the original debtor, because the form of the writ cannot be so changed as to direct the attachment of property not belonging to the defendant, or else the property of A can be attached upon a writ directing only the attachment of the property of B. It is more reasonable to hold that the authority to secure liens by attachment carries with it, by implication, authority to alter the precept, so far as is necessary to give the lien statute practical effect without rendering all officers who attempt to act under it liable in trespass.

The principle of several decisions, under a somewhat similar statute in Maine, seems to sustain the result reached in this case. See *Stedman* v. *Perkins,* 42 Maine 130 ; *Perkins* v. *Pike,* 42 Maine 141 ; *Annis* v. *Gilmore,* 47 Maine 152 ; *Campbell* v. *Smith,* 47 Maine 143 ; *Holyoke* v. *Gilmore,* 45 Maine 566 ; *Cunningham* v. *Buck,* 43 Maine 455 ; *Redington* v. *Frye,* 43 Maine 578. The argument of Messrs. *Rowe & Bartlett,* counsel for *Redington* v. *Frye,* presents a clear statement of the general principle ; and some extracts from it are contained in the present opinion.

As Warren's lien was not secured by a valid attachment, it expired at the end of sixty days after March 15th ; and he cannot justify the acts done under his direction subsequently to May 16th.

Unless the report is recommitted, there must be

*Judgment for the plaintiff on the award.*