## COUNTY OF CUMBERLAND.

### FOWLER & al. versus LUDWIG.

The by-laws of a corporation required that transfers of shares in its capital stock should be "noted and subscribed in a book, kept for the purpose;" *Held*, that the sale of a stockholder's shares would not exonerate him from individual liability upon · corporation debts, contracted *prior* to the time of noting and subscribing the sale upon the transfer-book.

If negotiable paper be received for an existing debt, the presumption is that it was taken as a *payment* of the debt.

This presumption may be rebutted by proof of circumstances showing that it was not the creditor's intention to receive it as a payment.

Such a misapprehension, by a creditor, of his rights, as would repel the presumption of payment, must be a misapprehension arising from a want of full knowledge, not of the law, but of the facts.

If the negotiable paper accepted is not binding upon all the parties under previous liability, the presumption of payment may be considered as repelled.

But this rule, *it seems*, extends only to cases of an *absolute* liability, and not to the case of a liability which is merely *contingent*.

Of a negotiable order accepted by the creditor of a corporation for a previous debt, the presumption is, that it was taken *as a payment*, although it was drawn merely by the prudential officers of the corporation upon its own treasurer.

On Report from *Nisi Prius*, Howard, J. presiding.

Action of the case, submitted to the Court upon the evidence.

The material facts, as determined by the Court, are as follows. — The George's Canal Company was incorporated after the 16th of February, 1836. Its shareholders, therefore, to the respective amounts of their stock, were subject to personal liability for the debts of the company, as prescribed. R. S. c. 76, § 18, 19 and 20.

The defendant, in July, 1846, subscribed for six shares at $50, each. This subscription he duly paid. Upon the stock book of the company he was charged, Aug. 1, 1846, for 12 shares $600, and credited in 1847 " by cash, as per treasurer's account, $300, six shares."

A by-law of the company provided that transfers of stock should be noted on the stock book and " subscribed by members." In 1847, the defendant sold to one Levensaler six shares, but the sale was not then noted in the stock book. The transfer, however, was made and subscribed in the book, on *December* 12, 1848.

In February, 1847, the plaintiffs contracted with the company to do, upon the canal, certain work which they completed in November, 1848.

For that work they received, *December* 13, 1848, negotiable orders of that date for $5662,50; and on January 10, 1849, a negotiable order of that date for $966,34, and on March 2, 1849, a negotiable order of that date for $604,55. These orders were all drawn by the president upon the treasurer of the company. The plaintiffs' bill for the work was receipted under date of the same 2d March, 1849, at which time they received from the president a schedule of the orders, to which was appended a statement that " all bills between the parties are settled."

Upon these orders, the plaintiffs recovered judgment against the company at the March term of the Court, 1849, for $7341,52. That suit was brought upon the original contract and upon the orders of Dec. 13, 1848. The judgment, however, by consent of the president, was taken to the amount due upon all the orders, although one of them was drawn after the suit was brought. The officer, holding the execution, pursued the statute provision requisite for making the defendant personally liable, and the corporation is admitted to be insolvent.

This action is brought in order to recover of the defendant to the amount of his stock in the company.

*Shepley & Dana,* for the plaintiffs.

The sale of the six shares to Levinsaler took effect, as to third persons, on the 12th of Dec. 1848. If the judgment against the company was recovered *wholly upon the orders,* the earliest of which was given December 13, 1848, it may possibly be urged by the defendant that the orders, being negotiable, constituted a payment of the contract debt, and that therefore this defendant cannot be liable, because he was not a stockholder at any time after the debt, evidenced by the orders, was created.

We know that in some States, when a party, bound to the payment of a simple contract debt, gives his own negotiable promissory note for it, the presumption of law is, that it is accepted in discharge of the preëxisting debt. It is so presumed, *because* the party receiving it relinquishes no security, but has the same responsibility for payment which he had before, with more direct and unequivocal evidence of the debt, and with power, by indorsement, to transfer the whole interest to another. But, when the promissory note given is not the obligation of *all* of the parties who are liable for the simple contract debt, and, if held to be in satisfaction, would wholly discharge the liability of a portion of those previously liable, the presumption, if it exist at all, is of much less weight. It then becomes a question of fact on the evidence whether the note was given and received in

satisfaction and discharge of the original debt. *Maneely* v. *McGee,* 6 Mass. 143 and Rand's notes. See also opinion of SHAW, C. J., in case *Melledge* v. *Boston Iron Company,* just rendered and published in the newspaper.

This presumption of payment may also be rebutted by proof of facts or circumstances inconsistent with it. *Descadillas* v. *Harris,* 8 Greenl. 298. [The counsel then argued largely upon the evidence to show that, in this case, such a presumption is rebutted. But as this part of the argument was *upon matter of fact,* addressed to the Court when acting as a jury, it can be of no profit to insert it here.]

If the plaintiffs knew what would be the effect of their receiving these orders as satisfaction of the prior debt, they never would have so received them. If they took them thus in ignorance of that effect, and in misapprehension of their rights, they are not bound by such acceptance, and may repudiate the orders and rely upon the original contract. *French* v. *Price,* 24 Pick. 13. As the company was known to be insolvent, it would better subserve the purposes of law and justice, and is therefore the presumption of the case, that the orders were accepted only as collateral.

But suppose these orders were independent securities, and that they amounted to an extinguishment of the prior debt, what does that avail this defendant? We have seen that the last order could not enter as a foundation of the judgment. For the action was commenced before that order was drawn. The judgment must have been rendered, then, on the contract described, except so far as the same had been paid by the orders, the *amount* being fixed by the agreement.

By referring to the case, we find that the debt was contracted and due in November, whereas the defendant's transfer was not recorded till afterwards. The last order, which failed of its design, amounted to more than the defendant's stock, and consequently, supposing the other orders *did* amount to payment, there was more of the debt, contracted during defendant's ownership of stock, unpaid at the time judgment was rendered, than the amount of his stock, so that no injury

can possibly be done him by making him liable with the other members.

But we yet insist with all confidence, that the defendant still owns six shares of stock in the Canal Company, which he has never transferred.

It seems, too, a matter of great doubt if *in any case* the mere *order* of one officer of a *private* corporation upon another, should be presumed to be taken in payment of a pre-existing debt ; especially doubtful is it, when the corporation is known to be insolvent, and by taking the order, the creditor gains no additional or better security and may lose all that he had before.

*A. P. Gould*, for the defendant.

SHEPLEY, C. J. — The right of the plaintiffs to recover will depend upon their being creditors of the Georges Canal Company, while the defendant was an owner of its stock. He subscribed for six shares on July 23, 1846. These were informally transferred to Caleb Levinsaler on December 7, 1847. No transfer of them was made upon the books of the corporation until December 12, 1848. The defendant, as it respects a creditor of the corporation, must be considered as their owner until that time.

He was charged on the stock book of the corporation with twelve shares under date of August 1, 1846, and he is there credited for cash $300, and for six shares of stock. There is no other evidence, that he was the owner of more than six shares. It does not appear, that the charge for twelve shares was at any time admitted by him to have been correctly made; or that he ever paid any assessment on more than six shares ; or that he claimed to be the owner of a greater number.

The charge with the credit of six shares made during the following year would rather indicate, that he never consented to become the owner of more than six shares. The charge made by the corporation cannot make him the owner of more, without some evidence that it was admitted or sanctioned by him. The by-laws of the corporation required, that the stock

book should be subscribed by the members of the corporation. He must therefore be regarded as the owner of six shares only, until they were transferred on December 12, 1848.

To prove that they were creditors of the corporation before that time, the plaintiffs introduced the record of a judgment founded, as they allege, partly or wholly upon a contract made between them and the corporation during the month of February, 1847, with testimony to show, that they had performed the services required and completed them in the month of November, 1848 ; and that the orders presented in the case were drawn for work performed under that contract.

On December 13, 1848, three orders, drawn by the president on the treasurer of the corporation, payable to the plaintiffs or their order, were received by them for labor performed under the contract. There were counts in the declaration upon the contract and upon these orders.

On January 10, 1849, another order was drawn by the president upon the treasurer for the same purpose, payable to one of the plaintiffs or his order, and it was received by them.

On March 2, 1849, a settlement was made between the plaintiffs and the president of the corporation, when another order payable to the plaintiffs or their order was drawn in like manner and received by them. The plaintiffs signed a receipt for the bills presented for services performed under the contract as settled ; and received from the president a statement, that they then held the orders named, with an assent by him as one of the directors, that a default should be entered in their action then pending against the corporation.

In this and in some of the other States of the Union an existing debt is presumed to have been paid by the reception of a negotiable promissory note for it.

In the case of *Varner* v. *Nobleborough*, 2 Greenl. 121, it was decided, that the same presumption would arise from the reception of a negotiable order drawn by the selectmen of a town upon its treasurer. That decision is in principle applicable to the present case.

This presumption may be rebutted by proof of the circum-

stances, under which the negotiable paper was received, show-ing that it was not intended to operate as payment.

Some of the circumstances, which might have such an ef-fect, have been noticed in the decided cases. If the negotia-ble paper was accepted in ignorance of the facts or under a misapprehension of the rights of the parties, it has been held, that the presumption might be considered as rebutted. *French* v. *Price*, 24 Pick. 13. So if the paper accepted is not bind-ing upon all the parties previously liable, or if the paper of a third person be received not expressly in payment, the pre-sumption may be considered as repelled. *Melledge* v. *Boston Iron Company*, cited by the counsel.

In this case the insolvent corporation would remain equally liable, whether the original debt arising out of a performance of the contract was or was not extinguished by an acceptance of the orders in payment. No party liable in the first instance would be discharged by an acceptance of the orders in pay-ment. The defendant and perhaps others, who were liable in case the corporation should fail to pay, would be discharged. It does not appear, that any stockholder except the defendant would be thus discharged; or that the person, to whom the defendant had transferred his shares, was not of equal ability to pay. When by an extinguishment of a debt some persons collaterally liable will be discharged, and others will become liable to pay the paper accepted in payment, no serious change of the ability of those liable to pay can be inferred without some proof of it. If responsible persons could not be expect-ed to become purchasers of the stock of an insolvent corpora-tion, it may be a fair inference, that no great change of stock-holders would take place.

The testimony does not prove, that the orders were accept-ed in ignorance of the actual state of facts. The plaintiffs must have been aware, that stockholders of corporations may be constantly changing, while their stock is considered to be of any value. When it becomes apparent, that their share holders may suffer loss, no great changes can be expected without the imputation of fraud, and that cannot be imputed without proof.

The plaintiffs may have received the orders without knowing what the effect would be upon their rights. A misapprehension of rights, which would rebut the presumption of payment, must be something more than this. It should be a misapprehension of rights arising out of a want of full knowledge of the facts.

The suit might be defeated, it is said, if the parties intended to extinguish the original debt; and it is obvious, that the intention was to allow it to proceed to judgment. The suit as commenced might have been maintained for a large amount consistently with an extinguishment of the original debt; and for the full amount with an assent to a default. As between the parties with such an assent the judgment may be valid, although it included an amount not due, when the suit was commenced.

If the judgment may be considered as rendered in whole or in part upon the original contract, the defendant not having been a party or privy to it may prove any fact showing, that the plaintiffs had no legal claim upon him.

The receipt of the plaintiffs, in discharge of their claims arising under the contract may be explained by parol testimony; but the testimony of the president of the corporation, who assisted to make the settlement, tends to support rather than to repel the presumption of payment.

The acceptance of negotiable paper for their debt; their receipt given in discharge of it; the memorandum of the settlement received by them; and the testimony of the president; present strong proofs of an extinguishment of the original debt due to the plaintiffs.

The facts relied upon to repel and overcome the presumption of payment and the corroborative testimony are not deemed sufficient to authorize the Court to determine, that the orders were not received in payment.

The result is, that the defendant is not liable to pay any portion of the debt due from the corporation to the plaintiffs.

*Plaintiffs nonsuit.*

TENNEY, WELLS, HOWARD and APPLETON, J. J. concurred.