## Case No. 7,772.

KIMBALL v. The ANNA KIMBALL.

[2 Cliff. 4.] [1]

Circuit Court. D. Massachusetts. Oct. Term, 1861. [2]

MARITIME LIENS — FREIGHT LIEN — WAIVER BY CHARTER PARTY—EFFECT OF NOTES GIVEN —GIVING OF CREDIT.

1. Under the terms of the charter-party in this case, the owner of the ship has a lien on the cargo for the payment of the freight.

[Cited in Costello v. 734,700 Laths, 44 Fed. 108.]

2. The effect of this is not changed where the charter-party stipulates that the balance of the charter was payable one half in five days and one half in ten days after discharge of homeward cargo.

3. Charter-parties may be so framed as to defeat the implication of a lien on the cargo for the freight. But it is necessary to examine the whole instrument, and to compare the parts invoked to defeat the lien with all the other parts.

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]
2 [Reversing Case No. 404. Decree of the circuit court affirmed in 3 Wall. (70 U. S.) 37.]

4. Delivery without any condition or qualification annexed is a waiver of the lien, because the lien is but an incident to the possession. But where delivery is made, upon an understanding between the parties that the transfer of the goods from the ship to the warehouse shall not be regarded as a waiver of the lien, no such consequences follow.

5. In this case the clause giving the five and ten days' credit was not a waiver or displacement of the lien, because the word "discharge" refers to the unlading merely, and not to the delivery of the cargo.

6. Where two notes of $5.000 each were received by the owner of the vessel, before her arrival at the home port, payable to his order in six months, and he gave a receipt for them to the charterers, stating that the notes were received on account of the charter of the ship, and that the amount was to be insured by the charterers and charged to the owner, it was *held*, that the notes were not received or given in payment, but as an accommodation to the owner; and having been tendered at the trial, the libellant is entitled to recover the whole balance of the charter-money, after deducting other payments.

7. Payment undoubtedly discharges the lien of the ship-owner; and promissory notes accepted as payment will have the same effect as payment in money. At common law, a promissory note given for a simple contract debt does not operate as a discharge of the original obligation, unless the intention of the parties to that effect affirmatively appears. But the rule in this state is different, and the question in this case must be governed by the rules of law prevailing in the jurisdiction where the transaction took place.

8. In this state, if a party, bound to a simple contract debt, gives his own negotiable security for it, then, in the absence of any circumstances to indicate the contrary intention of the parties, the presumption is that the bill or note was received in satisfaction of the pre-existing debt.

9. But as the liability for which the notes were given in this case was contingent, and as the agreement was, that, if the notes fell due before the ship returned, then the libellant was to take them up and renew them, or if the ship arrived before the notes fell due, he was to return them or deduct the amount from the charter-money, it was *held* they were not given or received in payment.

Appeal in admiralty from a decree of the district court for the district of Massachusetts.

The libellant was the owner of the ship Anna Kimball. The libel alleged that on the 4th of July, 1856, the libellant made a contract of affreightment with G. T. and W. P. Lyman, by which they agreed to pay him $35,750 for a round voyage from New York to Melbourne, thence to Calcutta, and thence to Boston; that the vessel arrived at the return port, with her homeward cargo on board, on the 23d of January, 1858; that $8,000 of the charter-money was paid in advance; that $8,000 more were paid in Melbourne and Calcutta; and that $19,750 were due, payable one half in five and the rest in ten days after discharge of the homeward cargo. It also alleged that by the contract the cargo laden on board became pledged to the libellant for the payment of the freight, and that he became entitled to a lien thereon by the admiralty and maritime law. The charter-party contained the clause: "To the true performance of all the foregoing covenants, the said parties, each to the other, do hereby bind

themselves, * * * especially the said party of the first part, the said vessel, her freight, tackle, and appurtenances; the said parties of the second part, her freight and merchandise to be laden on board." In the answer the ownership of the libellant, the contract of affreightment, and the agreement of the charterers to pay the sum specified in the libel for the voyage therein described, were admitted; but that the libellant became entitled to a lien on the cargo for the payment of freight, that the homeward voyage was duly performed, that the vessel fully discharged her cargo, were denied in the answer. Payments in addition to those admitted in the libel were set up in the answer, namely, $250 at Melbourne and Calcutta; $10,000 in Boston; $450.20 for insurance; collections of freight by libellant, to the amount of $7,297.50; leaving due to him, if the vessel had fully delivered her homeward cargo, $1,787.30. Certain facts were agreed between the parties in the district court [Case No. 404] as follows:

The following facts are agreed between the parties for the purposes of the trial of this cause: Of the charter-money $3,000 was paid in advance, in the manner stated in the charter-party, and $3,250 was paid in Australia and Calcutta, August 31, 1857. On application of the libellant for the purpose named in the receipt, he received from the Messrs. Lyman two notes of $5,000 of that date, on six months, payable to his order, and gave therefor the receipt, a copy of which is annexed and marked "A." The libellant procured these notes to use, and did obtain money upon one of them at a bank where he was a director, and where he had a standing account. The Messrs. Lyman effected insurance on these amounts, in pursuance of the agreement, paying therefor $415.20. In the autumn of 1857 the Messrs. Lyman failed, and on the 19th of January took the benefit of the Massachusetts insolvent law, the first publication of notice being on that day. After the failure, and before the publication of notice, the libellant tendered them back their said notes, and they refused to receive them, and the libellant has always been ready to give up said notes. The contract between the Messrs. Lyman and the claimants was in writing, and a copy thereof is annexed, marked "B." The ship was in charge of Mr. James H. Adams in Calcutta, the agent of the Messrs. Lyman, and the cargo libelled was purchased by him upon the credits furnished by the claimants, and shipped, and the bills of lading therefor were drawn and sent in pursuance of said agreement, the bills of lading being of the form a duplicate whereof is annexed and marked "C." Other cargo was taken on board, the property of sub-freighters, at specific rates of freight, and bills of lading given therefor of the form annexed and marked "D." The vessel arrived in Boston on the 23d of January, 1858, having been expected, when the

said notes were given, to arrive in about three or four months. The libellant has collected the freight due from the sub-freighters, amounting to about $7,000; the exact amount of which is to be ascertained and deducted from the charter. On the arrival of the ship and discharge of the cargo the claimants made due demand for the cargo under said bills of lading, and the libellant refused to deliver it, claiming a lien thereon for all the unpaid charter-money, deducting the sub-freight collected, but not deducting the said notes of $10,000. The claimants were willing to pay the balance of charter-money, for the purpose of getting possession, if the libellant would allow the said $10,000, but no offer was made to pay said balance unless the libellant yielded his claim to the $10,000. The cargo was libelled after the expiration of ten days from its discharge; and, on satisfactory stipulation being given in the cause for the demand and costs, it was delivered to the claimants, without prejudice to the rights or claims of either party. The libellant tenders the said notes in court.

If the libellant recovers, and the claimants so desire, the question of deduction for short cargo shall be open and sent to a commissioner. The claimants have not received enough from the cargo to pay their advances.

### A.

Boston, August 31, 1857. Received of G. T. & W. P. Lyman their two notes (of $5,000 each), amounting to $10,000, of this date, payable in six months, to my order, on account of charter of ship Anna Kimball. It is understood that this amount is to be insured by G. T. & W. P. Lyman, and charged to owners of ship. (Signed) Edmund Kimball.

### B.

No. 1163. Office of Duncan, Sherman & Co., Bankers, New York, March 30, 1857. Messrs. George Peabody & Co., London.— Gentlemen: We hereby authorize Mr. James H. Adams or Messrs. Anshootos, Day, & Co., of Calcutta, or any other parties whose drafts you may be directed by the written order of the said James H. Adams, or Anshootos, Day, & Co., to accept under this credit, to value on you at six months' sight, for account of Messrs. George T. & W. P. Lyman of Boston, for any sum not exceeding twelve thousand pounds sterling, to be used as he or they may direct for fair invoice cost of goods or merchandise, to be purchased for account of whom it may concern, and to be shipped to the port of New York or Boston by vessel or vessels. The bills must be drawn in Calcutta, or any port east of the cape of Good Hope, prior to the first day of April, 1858, and advice thereof given to you, accompanied by invoices and bills of lading, to our order, for the property shipped as above. Duplicate invoices and bills of lading to be forwarded by the vessel,

under cover, to us. It is distinctly understood that the shipping documents above mentioned are to be delivered to you prior to your acceptance of any draft or drafts under this credit, without which you will not consider yourself authorized to accept any draft or drafts by virtue hereof. And we do hereby agree with the drawers, indorsees, and bona fide holders of bills drawn in compliance with the terms of this credit, that the same shall be duly honored on presentation at your office in London. For £12,000. Very respectfully, your obedient servants. Please sign bills as being drawn under credit. No. 1163, dated March 30, 1857. N. B. All the bills of lading are to be forwarded to Messrs. George Peabody & Co. (by successive conveyance), except the one retained by the captain of the vessel, and the duplicate invoice and bill of lading by the vessel, under cover, to us. Insurance on order at New York or Boston.

New York, March 30, 1857. Messrs. Duncan, Sherman, & Co.—Gentlemen: Having received from you the letter of credit of which a true copy is on the other side, we hereby agree to its terms, and in consideration thereof we bind ourselves to accept, on presentation, the drafts of Messrs. George Peabody & Co., or your own, at five months from the date of Messrs. George Peabody & Co.'s acceptances, under said credit, for the amount of such acceptances; to give you satisfactory security for their payment, if required, and to pay them at maturity, either in sterling bills payable at sixty days' sight in London, indorsed by us and approved by you, or in dollars at the rate of exchange at which you may be drawing at the time of such payment, with commission on the amount of this credit of two per cent. And we hereby give you a specific claim and lien on all goods or merchandise and the proceeds thereof, in respect of which Messrs. George Peabody & Co. may come under any engagements, under said credit, on all policies of insurance on such goods or merchandise, which we hereby agree to effect or cause to be effected, to an amount sufficient to cover the credit and all bills of lading given for said goods or merchandise, with full power and authority to take possession and dispose of the same at discretion. And we also agree that you may reject any bills, however good, if you have at the time your limited amount on the drawees, and that in all payments or settlements, made or arising under this credit, the pound sterling shall be calculated at the current rate of exchange in New York or London, existing at the time of such settlement, and interest charged at bank rate if over five per cent. It being understood that remittances made in bills drawn by you or moneys paid to you shall be taken as payment without recourse. Any new credits which may be granted shall be considered under this agreement and on the basis thereof, with such variations as may be arranged, together with one tenth of one per cent for stamp duty on bills of exchange, imposed by the laws of Great Britain. (Signed) Geo. T. & W. P. Lyman.

---

C.

Shipped in good order and condition by James H. Adams, for account and risk of Messrs. Geo. T. & W. P. Lyman of Boston, in and upon the good ship or vessel called the Anna Kimball, whereof Captain T. B. Rennell is master for this present voyage, and now lying in the river Hoogly and bound for Boston.

Four hundred and sixty-nine bales gy. cloth. One hundred bales gy. bags. Two thousand pockets linseed. Three hundred and twenty bags ginger.

Being marked and numbered as per margin, and are to be delivered in the like good order and condition at the aforesaid port of Boston (all and every the dangers and accidents of the seas and navigation of whatsoever nature or kind excepted), unto order of Messrs. Duncan, Sherman, & Co., or to their assigns, he or they paying freight for the said goods, as per charter-party, without primage and average accustomed.

In witness whereof the master of the said ship or vessel hath affirmed to five bills of lading, all of this tenor and date, one of which being accomplished, the rest to stand void.

Dated in Calcutta, this 7th day of August, 1857.

Weight and contents unknown to

(Signed)  T. B. Rennell.

| TONS. | FT. | IN. | | |
|---|---|---|---|---|
| 340 | 1 | 0 | L. & L. $1 e 189 / A. K. 191 e 470 | 469 bales. |
| 37 | 20 | 0 | " " $1–2 | 100 bales. |
| 34 | 6 | 7 | " " | 2,000 pkts. |
| 29 | 33 | 0 | " " | 320 bags. |
| 441 | 20 | 7 | | |

Captain's copy.

D.

Shipped in good order and condition by William S. Wilmer, on board the good ship called the Anna Kimball, whereof T. B. Rennell is master for the present voyage, now lying in the port of Calcutta and bound for Boston.

To say:                                                 14
                                                        13
                                                        ——
                                                        42
                                                        14

L. & W.
I. No. 205-222.
Tons 3 13 9.

Eighteen chests indigo,                                 182

being marked and numbered as in the margin, and are to be delivered in like good order and condition (the danger of the seas only excepted) unto Messrs. Lowber and Wilmer or to assigns, he or they paying freight for the said goods, fourteen dollars per ton of forty cubic feet.

In witness whereof, the master of the said vessel hath affirmed to four bills of lading, all of this tenor and date, one of which bills being accomplished, the others to stand void.

(Signed) T. B. Rennell.

Dated at Calcutta, 27th July, 1857.

---

A decree was entered in the district court in favor of the libellant, for twenty-five hundred dollars. Motion was subsequently made in the district court, by the libellant, that the foregoing agreed statement was "not a part of the record, and should not be certified as such to the circuit court, and that it should be discharged, on account of an alleged error in the same," but the court declined to entertain the motion, because it came too late, being after the decree. Motion was made in this court, that the statement of facts be discharged, and the motion was granted, after a hearing of the parties, upon the condition that the libellant pay all taxable costs to the time of the motion, and recover none prior to that time, in case his appeal is sustained. After the discharge of the agreed statement, in the circuit court, the parties entered into a new stipulation, agreeing that all the previous statement was correct, except the words, "having been expected, when the said notes were given, to arrive in about three or four months."

Thaxter & Bartlett, for claimants.

The notes of $5,000 each were made and treated by the parties as an advance of part of the charter-money, in the same manner as the notes for $8,000 originally advanced, otherwise there would have been no agreement for insurance. Parties may by their contract so fix the time for the payment of freight as to lose the lien of the ship on the cargo for freight. Raymond v. Tyson, 17 How. [58 U. S.] 53; 1 Pars. Mar. Law, 252. Discharge is for the purpose of delivery, and the discharge must be so made that the consignee may arrange for the payment of freight and receive the goods as fast as they are discharged. Brittan v. Barnaby, 21 How. [62 U. S.] 529. It has also been settled that notice to consignee that his goods are being discharged, if reasonable, amounts to a delivery so as to place the risk upon the consignee. Richardson v. Goddard, 23 How. [64 U. S.] 28. To have discharged and delivered the goods in this case, according to the well-established custom, they would have been received by the consignee nearly a month before the charter-money became due. The same is true in regard to the time of payment fixed by the two notes of $5,000 each.

R. H. Dana, Jr., and B. R. Curtis, for libellant.

The charter is of that class in which the owner retains a lien on the cargo. The Volunteer [Case No. 16,991]; Gracie v. Palmer, 8 Wheat. [21 U. S.] 605; Faith v. East India Co., 4 Barn. & Ald. 630; Christie v. Lewis, 2 Brod. & B. 410; Certain Logs of Mahogany [Case No. 2,559]; Tate v. Meek, 8 Taunt. 280. The clause giving the shipper five and ten days for payment of freight, being after discharge, and not after delivery, is not a waiver of the lien. Raymond v. Tyson, 17 How. [58 U. S.] 53; 3 Kent, Comm. 122; Brittan v. Barnaby, 21 How. [62 U. S.] 529; Bulkly v. Naumkeag Steam Cotton Co., 24 How. [65 U. S.] 386. The notes of $5,000 each were not payment. Peter v. Beverly, 10 Pet. [35 U. S.] 532; Story, Prom. Notes, § 104. Not necessarily under the law of Massachusetts. Melledge v. Boston Iron Co., 5 Cush. 170. This case being one of commercial law is governed by the general law of the United

States and of the mercantile world. Miller v. Austin, 13 How. [54 U. S.]; Carpenter v. Providence Wash. Ins. Co., 4 How. [45 U. S.] 185; Foxcroft v. Millett, Id. 353; Williams v. Suffolk Co. [Case No. 17,738]. The notes not a waiver of the lien. The Volunteer [supra]; Certain Logs of Mahogany [supra]; 3 Kent, Comm. 122; Raymond v. Tyson, 17 How. [58 U. S.] 53. The clause as to insurance proves nothing against this view; the insurance would operate for the benefit of whom it might concern. If the libellant returned the notes, the insurable interest would be in him; if claimants had to pay them, it would be in them.

CLIFFORD, Circuit Justice. The charter-party shows that the ship was chartered as alleged in the libel. By the terms of the charter-party the owner was to make the necessary repairs and provide the vessel with every requisite, and with men and provisions necessary for the voyage, and also to ballast the ship at the outward port. He agreed that the whole vessel, with the usual exception of the cabin or room in the cabin for the master and other officers, and room also for the accommodation of the crew and the storage of the sails, cables, and provisions, should be at the sole use and disposal of the charterers, and he also engaged to take and receive on board the vessel during the voyage all such lawful goods as they might think proper to ship.

Performance of the voyage as described in the libel is admitted, and it is also admitted that the charterers have failed to pay the balance of the charter-money. On that state of the case the owner of the ship seeks, in this suit, to recover the amount of the unpaid balance from the cargo of the homeward voyage, upon the ground that he has a maritime lien on the same for the payment of the charter-money. As the consignees of the cargo sought to be charged, the claimants resist the claim and insist that the terms of the charter-party in this case created no lien in favor of the owner of the ship; and if it did, that the lien has been displaced by his own acts, at least to the amount of the notes specified in the receipt. They do not controvert the position assumed by the libellant, that in general the owner, in such cases, has a lien on the cargo for the freight, and they admit that the lien is one that is favored by the courts, and will be enforced unless clearly displaced by the acts or agreements of the parties. Conceding all that, still they insist that the clause of the charter-party providing that the "balance of charter should be payable, one half in five days and one half in ten days after discharge of homeward cargo" is inconsistent with the retention of the lien upon the cargo for the payment of that balance. Charter-parties may, doubtless, be framed with provisions so entirely inconsistent with a lien on the cargo for the freight as to defeat the implication to that effect,

which would otherwise arise in favor of the owner. Whenever that suggestion is made, however, it then becomes necessary to examine the whole instrument to ascertain its true meaning, and test the suggestion by comparing the parts invoked to defeat the lien with all the other parts of the instrument. Suppose the clause in question, if standing alone, might have the effect assumed by the claimants, which is utterly denied, still the suggestion could not prevail in this case, because upon an examination of the last clause of the instrument it will be seen that the parties in legal effect have stipulated that the ship shall be bound to the merchandise and the merchandise to the ship; so that the contract itself is opposed to the theory of the claimants. Abb. Shipp. 360; Vandewater v. Mills, 19 How. [60 U. S.] 90.

But the charter-party is clearly of the class in which the owner has a lien on the cargo under the maritime law, whether it be so stipulated or not in the charter-party, provided it contains no provisions inconsistent with that implication in favor of the owner. Undoubtedly the ship-owners, says Taney, C. J., in the Case of Bags of Linseed, 1 Black [66 U. S.] 112, has a right to retain the goods until the freight is paid, and has, therefore, a lien upon them for the amount, and as contracts of affreightment are regarded by the courts of the United States as maritime contracts, over which the admiralty has jurisdiction, the ship-owner may enforce his lien by a proceeding in rem in the proper court. Delivery, without any condition or qualification annexed, is a waiver of the lien, because the lien is but an incident to the possession, with the right to retain the thing until the interest in it or the claim upon it is discharged. Where delivery is made, however, upon an understanding between the parties that the transferring the goods from the ship to the warehouse shall not be regarded as a waiver of the lien, no such consequences will follow; but a court of admiralty will regard the transaction as a deposit of the goods for the time, and not as an absolute delivery. Many other cases are cited by the libellant to show that the charter is of the class in which the owner retains a lien on the cargo, but it is not necessary to refer to more than one or two of them, as the recent decision of the supreme court recognizes the general principle for which the libellant contends, and, to that extent, is decisive of the point. The Volunteer [Case No. 16,991]; Gracie v. Palmer, 8 Wheat. [21 U. S.] 601.

Assuming that proposition, however, to be correct, still it does not fully meet the difficulty suggested by the claimants. They do not controvert the position that in general a lien arises in cases of this description in favor of the ship-owner, but they insist that the clause giving the five and ten days' credit after discharge of the homeward cargo is inconsistent with the retention of the lien, and in fact displaces it. If the question were ?

new one, it would deserve more consideration than under existing circumstances it is entitled to receive. Judge Story had the same question before him in the Case of Certain Logs of Mahogany [Case No. 2,559], and as usual he exhausted the argument upon the subject. He held that the clause was not a waiver or displacement of the lien, because the word "discharge" refers merely to the unlading, and not to the delivery of the cargo. That rule was rightly established at the time, has been constantly followed ever since, and at the close of a quarter of a century ought not to be changed. Five and ten days "after the discharge" are the words of the charter-party; and both the pleadings and evidence show that no part of the goods were delivered. Possession, therefore, is still in the libellant, and where that is so, the authorities are unanimous that the lien is not displaced.

It is insisted by the claimants, in the second place, that the notes of 31st August, 1857, were received by the libellants as an advance, and as payment of the amount for which they were given. Payment undoubtedly discharges the lien of the ship-owner, and promissory notes, accepted as payment, will have the same effect as payment in money. At common law, a promissory note given for a simple contract debt does not operate as discharge of the original obligation, or constitute a payment of the original debt, unless it affirmatively appears that such was the intention of the parties at the time it was given. Clark v. Mundal, 1 Salk. 124; Downey v. Hicks, 14 How. [55 U. S.] 249; Lyman v. Bank of U. S., 12 How. [53 U. S.] 225. But the courts in this state have adopted a different rule, and the question in this case must be governed by the rules of law which prevail in the jurisdiction where the transaction took place. Whenever a party bound to a simple contract debt, in this state, gives his own negotiable security for it, the presumption is, as matter of fact, in the absence of any circumstances to indicate a contrary intention of the parties, that the bill or note was given and received in satisfaction and discharge of the pre-existing debt. Such presumption, however, is not a conclusive one, but may be controverted by any circumstances which show that such was not the intention of the parties. Fowler v. Bush, 21 Pick. 230; Melledge v. Boston Iron Co., 5 Cush. 170; Fowler v. Ludwig, 34 Me. 461; Baker v. Draper [Case No. 766].

Applying these principles to the present case, it is clear that the question presented is purely one of fact, to be determined from the nature of the transaction and all the evidence in the case. Brief references only will be made to the testimony, as it is not the intention of the court to enter into extended argument upon matters of fact, except in cases of real difficulty or doubt. Strong doubts arise, from the very nature of the transaction, whether parties, under the circumstances and at the date of the receipt, would give and receive notes in actual payment. The liability was certainly contingent, and it is more reasonable to suppose that if they had intended an actual payment, the language of the receipt would have been different. Claimants insist that the parties treated the notes as payment, but one of the charterers expressly states that the notes were given as an accommodation to the libellant, and that the agreement was, if the notes fell due before the ship returned, then the libellant was to take them up or renew them, and if the ship got in before the notes fell due, he was to return them or deduct the amount from the charter-money. Full confirmation of his statement is found in the testimony of the ship-broker who made the arrangement. On the other hand, the other charterer states that the notes were given without conditions, except that the libellant was to insure the amount, and have the loss payable to their firms, but he does not affirm that the notes were given or received in payment, nor does he deny the agreement stated by the other charterer. These brief references will be sufficient to show the leading features of the testimony upon which the question depends.

After careful examination of the whole evidence, I am of the opinion that the notes were not given or received in payment, but as an accommodation to the libellant, and, having been tendered at the trial, the libellant is entitled to recover the whole balance of the charter-money, after deducting the other payments. The decree of the district court [Case No. 404] is, therefore, reversed, and the cause must be sent to an assessor to ascertain the amount.

[NOTE. Mr. Justice Field, who delivered the opinion of the supreme court affirming this case, in speaking as to whether or not the lien of the owner of the ship upon the cargo for the freight was waived or displaced by the stipulations of the charter party, says: "Two clauses are mentioned in support of this position,—the clause requiring the delivery of the cargo within reach of the ship's tackle, and the clause providing that the balance of the charter money remaining unpaid on the termination of the homeward voyage shall be 'payable, one-half in five, and one-half in ten days after discharge' of the cargo. There is nothing in these provisions inconsistent with the right of the owner to retain the cargo for the preservation of his lien. The first clause only designates the place where the delivery must be had. The second clause only prescribes the period in which payment must be made after the discharge of the cargo. The discharge mentioned does not import a delivery of the cargo; it only imports its unlading from the ship. * * * The clause was intended for the benefit of the charterers. It gives them ample time to examine the goods and ascertain their condition." Upon the second point considered by the circuit court the learned justice is no less clear: "The rule in Massachusetts is an exception to the general law, but even then the presumption that the note was given in satisfaction of the debt may be repelled and controlled by evidence that such was not the intention of the parties, and this evidence may arise from the general nature of the transaction, as well as from direct testimony to the fact." The notes were

given before the termination of the voyage, and consequently before the balance of the charter money became due. "Freight being the compensation for the carriage of goods, if paid in advance, is, in all cases, unless there is special agreement to the contrary, to be refunded, if for any 'cause not attributable to the shipper the goods be not carried. There was no such special agreement in this case. * * * According to the ·statement of the broker who made the arrangement, the notes were given for the accommodation of the ship owner, and 'were to be held over or removed in case they fell due before the arrival." These considerations are, in the opin·ion of the learned justice, ample to repel the presumption that the notes were given as payment. 3 Wall. (70 U. S.) 37.]