## JOHNSON *versus* PIKE.

By R. S. c. 125, § 37, liens for erecting or repairing buildings extended only to contracts made by the *owners* or *mortgagers* of land or by persons who had contracted with *them.*

An obligee in a bond for the conveyance of land cannot subject it to a lien for such a cause.

A lien right for such a cause is lost, unless the land be attached within ninety days from the pay-day.

It is also lost, if the creditor, in taking his judgment, include any non-lien claims.

The owner of land may expose it to a lien-claim in favor of a person, who may make erections thereon, pursuant to a sub-contract between himself and the principal contractor, whom the owner had employed to do the work.

In such a case, the sub-contractor may perfect his lien by levying the land under the judgment which he may have recovered against the principal contractor.

But in a subsequent suit, involving title to the land, such owner is not to be considered as a party or privy to that judgment, and is not estopped by it, or by any allegations in the writ upon which it was obtained, to show that no lien right had existed.

ON REPORT from *Nisi Prius,* RICE, J., presiding.

CASE against the sheriff, for the neglect of his deputy.

It appeared that E. D. Johnson and Samuel Soule were in the joint occupation of a grist-mill. The mill needed repairs, and Soule contracted with Johnson to procure and pay for them. The plaintiff furnished E. D. Johnson with mill irons for that purpose. On July 7, 1846, the plaintiff's ac-

count amounted to $56,75, for such articles furnished at different dates between October 18, 1845, and March 7, 1846. Upon July 7, 1846, he sent to the debtor a copy of the account, attached to a letter requesting an early payment.

[NOTE. — This letter was offered in evidence by the defendant, and was admitted, though against objection made by the plaintiff.] On July 23, 1846, the account was enlarged by a charge of $4, for an additional mill iron. The articles thus charged were all of them used by E. D. Johnson, in repairing the mill.

On *Aug.* 10, 1846, the plaintiff brought his action upon the account alleging, that he had furnished the irons upon a contract, made Oct. 1845, which was performed on his part and completed on *July* 23, 1846.

The writ was delivered on the same day to the defendant's deputy, with orders indorsed upon it to attach the real ——— of the defendant, especially his interest in a grist-mill operated by him.

The deputy returned such an attachment, and certified that he had made return thereof to the office of the *town clerk.* He in fact made no return of it to the the *register of deeds.*

In that suit, the plaintiff recovered judgment by default, and seasonably placed his execution in the hands of said deputy who returned the same unsatisfied. This action is brought against the sheriff for the neglect of the deputy to attach the mill upon the writ.

In relation to the title and rights in the mill and its lot, the proof was as follows : —

In 1845, Soule owned and still continues to own one half undivided, of the value of $1000.

In 1843, the other half was owned by E. D. Johnson. In Sept. 1844, he conveyed his half to one Russell, by warranty deed, recorded March, 1845.

On Nov. 2, 1844, Russell contracted in writing to re-convey upon payment of debts due from Johnson of $305,38. In Dec. 1845, Johnson quitclaimed all his interest in the property to Emerson, who in the margin of the deed certifies

that he took it for the benefit of Henry True.  On March 24, 1846, Russell's contract was canceled, and he gave a new one, to convey to Johnson the same half of the property, on payment by Johnson, *within one year*, of $376,69, and interest. This contract was, on the 17th July, 1846, by a conveyance, not specifying any consideration for it, assigned by Johnson to True, and on the same day, Russell, by his deed purporting to be in consideration of $300, conveyed half the mill to True.

The case was submitted to the Court, upon certain stipulations, one of which was that, if the paper containing the above mentioned account of plaintiff against E. D. Johnson, with its accompanying letter, "should be held to be legally admissible and available and sufficient for defence, judgment should be rendered for the defendant."

*J. H. Williams*, for the plaintiff.

The question here presented is different from that in *Lambard* v. *Pike*, 33 Maine, 171.

The fault of the deputy does not arise from the *language* used in his return, but from his *doings*.  His wrongful registration in the office of the town clerk, instead of the registry of deeds, made a nullity of all that he did, as an attachment of real estate.  R. S. c. 114, § 32.

I.  The furnishing of the mill irons for the repairs, gave a lien right upon the mill.  To the perfection of such a right, an attachment must be made within ninety days from the pay-day.  The copy of the judgment against Johnson shows that pay-day for the irons was not until July 23, 1846, less than ninety days before the deputy was ordered to make the attachment.  Such an attachment then would have perfected the lien.  By the neglect to make the attachment, the lien right was lost.

1.  Soule owning half the mill employed Johnson to make the repairs.

In such a case, the statute expressly gives a right of lien. R. S. c. 125, § 37.  This was lost by the failure of the deputy to make the attachment.

2.  There was also a like right upon the other half.  John-

son made the contract for the repairs on Oct. 18, 1845. At that time, Russell's first obligation for a conveyance was in force. That obligation gave to Johnson an equitable interest in half the mill. That interest was *attachable;* R. S. c. 114, § 73 ; *saleable* on execution, R. S. c. 94, § 50 ; and *enforceable* by bill in equity, R. S. c. 117, § 50. It is equally a subject of lien as an equity of redemption would have been. It was an alienable interest, such as could have been "secured," as the statute expresses it, "by attachment." The second obligation for a conveyance by Russell did not extinguish the former. It was a mere renewal or continuation of it, inserting a definite limit of time, in which its condition should be performed.

This lien-right having thus attached to Johnson's equitable interest, no subsequent conveyance by him could dislodge it. *Whitmore* v. *Woodward,* 28 Maine, 417.

Thus by the neglect of the deputy to make the required attachment, the plaintiff's remedy has been wholly lost : for 1st, as against Soule, there being no privity of contract, the remedy was wholly *in rem;* and that is now gone. 2d, as against Johnson, the lien having failed to be secured, his deed to Emerson is let into full effect, and Johnson, as appears by the officer's return, has nothing wherewith to pay the debt.

II. Irrespective of any lien claim, the plaintiff is entitled to recover. Johnson, the debtor, had, under Russell's second obligation, an attachable interest in the mill.

His assignment of that obligation to True was without consideration, and therefore inoperative. Shep. Touch. 222 ; 10 Johns. 515.

As against creditors, it was clearly void. 28 Maine, 417. It being a parol contract and not a specialty, the consideration must be proved. *Rann* v. *Hughes,* 7 T. R. 347.

That equitable interest then, if duly attached, would have secured the plaintiff's debt. Hence the defendant's liability in this suit.

*J. S. Abbott,* for the defendant, presented the following, among many other points, in defence. —

The plaintiff has presented no evidence that there was any agreed time of payment. Hence the payment for each item of the iron work was due, as soon as the same was delivered. The plaintiff's letter of July 7, shows, that all the items, (except one of $4,00,) had been furnished as early as March 7 ; so that the lien-right expired on the 6th of June, that being ninety days from the last pay-day, *Badger* v. *Titcomb,* 15 Pick. 415.

And as to the $4 item also, the lien was lost, inasmuch as it was included in the judgment with the non-lien items. *Bicknell* v. *Trickey,* 34 Maine, 273 ; *Lambard* v. *Pike,* 33 Maine, 142.

This view at once dislodges all the support to this action on the ground that any *lien-claim* was lost to the plaintiff by the officer's omission to make an attachment.

Except on that ground of lien, (and that ground I have just shown to be untenable,) the plaintiff cannot and does not complain that Soule's interest in the mill was not attached, that action having been brought against Johnson alone. He however complains that irrespective of the lien, the neglect to attach Johnson's interest in the mill was an injury. But it was no injury. For Johnson, never, after the date of the writ, Aug. 10, 1846, had any interest whatever in the property. His last remaining interest was in Russell's conditional obligation for a conveyance. But that interest he had conveyed to True, on July 17, 1846.

*Williams,* in reply. —

The gentleman has assumed, in his argument, that the plaintiff's letter of July 7, 1846, is available to him as evidence. But that letter was not admissible, and the objection to it was seasonably made at the trial. The objection is, that it might be supposed to contradict the record of the judgment against E. D. Johnson. That record alleges, that the contract for the irons was made by E. D. Johnson, Oct. 18, 1845, and that the agreed pay-day was July 23, 1846. The recitals of the judgment are conclusive. 26 Maine, 411. The defendant cannot impeach them collaterally, for he is not a

creditor of E. D. Johnson. 6 Greenl. 29. Except by that letter, the plaintiff does not attempt to impeach them. But that letter does not, *in fact*, contradict the record. It merely states an account as it then stood, and makes a call for money, (much wanted.) It does not speak of a job completed, nor even of a debt due. The plaintiff could not know whether the job was completed, for he did not know whether E. D. Johnson would or would not want more irons. And, in fact the job was not then completed, for Johnson subsequently called for and took another article of the iron work contracted for. The recitals of the judgment then are to be taken as true, and they establish that the contract for the irons was made Oct. 18, 1845, and completed on July 23, 1846, which became the pay-day for the whole amount. The lien-right of the plaintiff then was in full force when the writ was issued, and when the officer was directed to make the attachment. His right of lien then attached to whatever interest Johnson on *that day* had in the mill. But on that day Johnson held an interest by virtue of Russell's first obligation for a conveyance. To that interest the lien-right attached, and adhered, and it would have been perfected by the attachment which the plaintiff ordered. For, as already stated, Johnson's assignment of it was void for want of consideration. If it should be held, that Russell's first obligation was nullified by the arrangement of March 24, 1846, and that his second obligation of that date was a new and original contract, then we say, that as the pay-day for the irons was not until July 23, the lien attached to the interest under that new contract. Johnson's conveyance to Emerson was not made until Dec. 10, 1845, and therefore not until the lien contract, of Oct. 18, 1845, had attached to the estate conveyed.

WELLS, J. — It is contended, that the plaintiff has sustained an injury, by the neglect of Seth Greenleaf, the defendant's deputy, to make an attachment of the real estate of Elijah D. Johnson on the tenth day of August, 1846. But

the real estate of the debtor, which the officer was directed to attach, had been conveyed by him to Leonard W. Russell, in September, 1844. Russell gave to Johnson a written agreement to convey the premises to him, dated Nov. 2, 1844. On the 24th of March, 1846, another contract was made, by which Russell agreed to convey the premises to Johnson, upon the payment of a sum of money, named in it, in one year. This contract was assigned, July 17, 1846, by Johnson to Henry True. It is said that the assignment was invalid because it was without consideration. None is mentioned in it. But on the same day when the assignment was made, Russell conveyed the premises to True, for a consideration recited in the deed of three hundred dollars. It also appears, that on the tenth of December, 1845, Johnson conveyed all his interest in the same land to I. P. Emerson, for an alleged consideration of five hundred dollars, and Emerson certifies in the margin of the deed, that he acted as the agent of True in taking it, and that it was executed to him for the benefit of True. The second contract from Russell might have been intended to be held by Johnson for the benefit of True, and the arrangement made in good faith to enable him to obtain a deed from Russell. An apparent consideration is disclosed, and there are no facts from which a fraudulent intent can be inferred. Johnson therefore at the time of the attachment had no interest in the land.

Nor can the claim by lien prevail. It is true, that the items of the account, excepting one, had accrued before the assignment. But no lien could arise under the statute, c. 125, § 37, except against the owner of the land, or a mortgager, upon some contract for labor or materials made with him. Russell was the owner, but he made no contract with any one for repairs, and his estate could not be charged with them against his consent. And Johnson had no power by virtue of the agreement with Russell for the purchase of the estate, to incumber it by a lien. Johnson's interest in the estate under the agreement, although attachable by his creditors, so long as he owned it, was not made subject by the statute to

any lien. One furnishing materials for repairs to the holder of such agreement has no priority over other creditors or purchasers.

But it is contended, that the plaintiff had a lien upon the half of the premises owned by Samuel Soule, and that it was lost by the want of a valid attachment. Soule made a contract with Johnson, the debtor, to repair his part of the mill. He being the owner might create a lien upon his own property by such contract, and under the statute, the plaintiff could claim the benefit of it, though the contract for the repairs was made by Soule with Johnson, the debtor.

But if a lien at any time existed against the property of Soule, it appears to have been lost by the course, which the plaintiff pursued. The letter of the plaintiff, dated July 7, 1846, shows very clearly, that the items of his account were then overdue. The date, of the last item mentioned in the letter, is March 2, 1846, and the inference to be drawn from its date is, that it was then due, and that the items prior in date were due at that time, if not before. The account then existing was due more than ninety days before the commencement of the action against Johnson. The preservation of the lien required, that the action should be commenced, and an attachment of the premises made, within ninety days from the time when payment becomes due. R. S. c. 125, § 37 and 38.

There is one item of the account against Johnson, which appears to have accrued on the twenty-third day of July, 1846, and the action was brought in season to preserve the lien on that charge. But it having been united with the other items, the lien for which was lost, and judgment having been taken for all of them, the lien to secure the payment for that item was also lost. *Lambard* v. *Pike*, 33 Maine, 141.

But it is contended, that the defendant is not at liberty to show, when the debt really became due, because it would contradict the time alleged in the writ against Johnson, and that the defendant is concluded by the judgment against

Johnson *v.* Pike.

Johnson, from showing when the payment for the articles furnished actually became due. But the plaintiff claims a lien against Soule, and if none existed, or if it once existed, and was lost by his own conduct, then he has suffered no detriment by the alleged neglect of the defendant's deputy in making the attachment. If the requisitions of the statute had been followed, and the lien had been perfected, Soule's interest in the mill might have been held. But it would have been so held by force of the facts, by which the lien was established, in conformity with the statute, and not by any estoppel against Soule arising from the judgment against Johnson. For Soule is neither party, nor privy to that judgment, and it would be a gross act of injustice towards him, if he were not permitted in subsequent litigation to show, that there was in fact no lien existing upon his property, when the judgment was rendered. Soule, not being a party to the judgment, would have a right to controvert those facts, which, it is alleged, lay the foundation for the lien. By the evidence now exhibited, it is very manifest, that there was no lien upon Soule's part of the mill, when the judgment was rendered, and that this result was produced by the action of the plaintiff himself. If the officer had attached all, that the plaintiff says he ought to have done, it would have been of no service to him. A levy upon the interest of Soule in the mill, would have proved entirely ineffectual, because the plaintiff had failed of securing his supposed lien upon it. It is in vain for the plaintiff to complain of an omission of duty on the part of the officer, who made the attachment, when a full and complete performance of it, in its broadest extent, would have been of no service to him.

According to the agreement of the parties, a nonsuit must be entered.

SHEPLEY, C. J., and HOWARD, RICE and HATHAWAY, J. J., concurred.