JOSEPH ANNIS *versus* CHARLES D. GILMORE.

In a suit to enforce a lien claim on logs, masts and spars, the general owner having been duly notified, whether he or the defendant in the suit appears or not, there must be, to preserve the lien of the plaintiff, a judgment of court confirming the validity of the lien.

When no such judgment appears of record, and an action is brought against the officer for not retaining the logs attached and selling them on the execution, the defendant officer is not estopped from showing that the lien did not exist, or is lost.

In an action brought to enforce such a lien, if judgment is recovered, and execution issued in common form, with directions to satisfy it out of the goods, chattels or lands of the debtor, and for want thereof, upon his body, the logs attached cannot legally be seized by virtue of it, nor is the officer responsible for not seizing and selling them.

In an action against an officer for not retaining property attached, to be sold to satisfy the execution, an amendment introducing a count for not returning the execution, embraces a new cause of action, and, if admitted, may be excepted to as improperly allowed.

ON REPORT of the facts by TENNEY, C. J., March term, 1859.

Joseph Annis, the plaintiff, was employed by one Josiah Marsh, during the winter of 1854–5, in getting out logs on Rapagemus stream. As he testifies, a certain mark was put on the ·logs on which he· worked, and no other mark was

put on them.   He settled with Marsh in April, 1855, and took Marsh's due bill for $64,90, payable in June, then next. $4,00 was afterwards paid and indorsed on the due bill.   In July, 1855, Annis commenced a suit against Marsh, for the *balance due* for his work on the logs so marked, with written directions on the back of the writ to attach the logs specified. The writ was delivered to the defendant, then sheriff of Penobscot county, and he returned that he had attached all the logs, masts and spars of the specified mark in the Penobscot river, on that and other writs, the plaintiffs in each of which claimed to have a lien on the logs attached for their labor thereon.   The action was entered at September term, 1855, and judgment obtained March 28, 1857.   At the September term, an order was entered on the docket for personal notice to be given to Rufus Dwinel of the pendency of the action, and, by entries on the docket at December term following, it appeared that Dwinel had acknowledged notice, "as per agreement."   Execution was issued and put in the hands of the defendant, as sheriff of Penobscot county, April 7 or 8, 1857, with directions to seize and sell the logs.   It was further shown by the admissions of the defendant, that, in April and May, 1857, he found the logs attached on the writ all gone from the river.   It was also in evidence that Marsh was a man of no property.

This action was brought August 24, 1857, against the defendant, as sheriff of Penobscot county, for not retaining and keeping the logs attached, for thirty days after the rendition of judgment, that they might be taken on execution to satisfy the judgment.

Before trial, the plaintiff moved for leave to amend his declaration, by inserting a count for not returning the execution against Marsh, which had been seasonably put into the defendant's hands.   This was objected to by the defendant as introducing a new cause of action, but was allowed by the presiding Judge.

In defence, the deposition of Rufus Dwinel was introduced, who testified that, in the winter of 1854–5, he carried on lum-

bering operations on the Penobscot river and its tributaries, and employed Josiah Marsh to drive lumber by the thousand; that Marsh had no interest in, or lien upon the logs; that a part of the logs were marked as specified in the plaintiff's writ against Marsh, as also some hauled by Marsh the year before, all of which came down and were driven by Marsh, in the spring of 1855; that that particular mark was witness's general log mark, and had been for more than ten years, and he never knew of any other person on the river having logs of that mark; that, on July 30, 1855, he had a large number of logs of that mark in Penobscot river, not cut, hauled or driven by Marsh; and that, on that day, Marsh had no interest directly or indirectly in any of the logs so marked, having been fully paid for all he had done in cutting, hauling and driving them up to that time.

The defendant also introduced a memorandum in writing, dated Dec. 29, 1855, and signed by Dwinel, taken from the files of the Court, acknowledging notice on a large number of actions, but that of *Annis* v. *Marsh* was not amongst them.

The case was taken from the jury, and the evidence reported, the parties agreeing that the full Court should give judgment for either party, as the law and evidence should require.

*E. Hutchinson,* for the plaintiff, argued that the writ and proceedings upon it had been substantially correct, and that notice had been duly given · to Dwinel, as shown by the entry on the docket. Execution was issued on the judgment, *Annis* v. *Marsh,* in the only form prescribed by the statute. Neither the law nor the Court has prescribed any different form for the execution to enforce a lien. The delivery of the execution seasonably to the defendant, with orders to seize and sell the property attached, fixed his liability. *Davis* v. *Richmond,* 14 Mass., 473; *Humphreys* v. *Cobb,* 22 Maine, 380; *Hart* v. *Sherwin,* 1 Pick., 521.

There is no evidence that the note was given in payment, and to discharge the lien; and without proof of such agreement, the lien is not discharged. Statute 1851, c. 216, § 1.

Annis *v.* Gilmore.

As to the amendment. In most cases, the allowance of an amendment is a matter of discretion, and not subject to exceptions. *Wyman* v. *Dorr*, 3 Greenl., 183; *Clapp* v. *Balch*, 3 Greenl., 216, and other cases in Maine and Massachusetts. An inadmissible amendment may be excepted to. *Newall* v. *Hussey*, 18 Maine, 249. The amendment in this case introduces no new cause of action, and is, therefore, in the discretion of the Court. The gravamen in the writ was the neglect to keep the property attached, so that the execution could be satisfied therefrom. The amendment, at most, aids a declaration defectively stated. In *Pullen* v. *Hutchinson*, 25 Maine, 249, the Court say, that "a declaration so defective that it would exhibit no sufficient cause of action may be cured by an amendment without introducing any new cause of action." The intended cause of action may often be as clearly perceived in a defective declaration, as though it were perfect. R. S., 1857, c. 82, § 10; *McLellan* v. *Crofton*, 6 Greenl., 307; 16 Maine, 263, 282.

The case of *Redington* v. *Frye*, 43 Maine, 578, does not shake the positions here taken. The law should be administered according to the rules and forms of the common law, and without regard to the codes and ordinances of the middle ages, or the forms of admiralty process drawn from the civil law.

*D. D. Stewart*, for the defendant.

1. The amendment was inadmissible. The writ, as drawn, did not allege that any execution had ever been placed in the defendant's hands. If execution had not been placed in his hands, and that within thirty days after judgment recovered, the plaintiff had suffered no injury by the neglect of the defendant, and could not hold him liable for damages. A suit brought against a sheriff, during the pendency of the original action, for not taking care of property attached, might present a different question; but here, the plaintiff alleges distinctly that judgment had been recovered in the suit on which the logs were attached. Hence, before the amendment, the

Annis *v.* Gilmore.

writ did not set out facts enough to constitute a cause of action.

The amendment introduces an entirely new cause of action, alleging that an execution was issued, and seasonably placed in the defendant's hands, so that if the first alleged ground of neglecting to retain the property failed, the plaintiff might still claim to hold the defendant for nominal damages, for not returning the execution in the life of it. This, according to every legal authority, was inadmissible. *Sawyer* v. *Goodwin*, 34 Maine, 419.

2. Dwinel, the general owner of the logs, was not notified of the pendency of the suit. The inadvertent entry on the docket, that Dwinel acknowledged notice, is corrected by a reference in the same entry to the "agreement" on file. An inspection of that agreement shows that the action of this plaintiff against Marsh, is not embraced in it. The want of notice to Dwinel destroys the plaintiff's lien, if he had any. *Redington* v. *Frye*, 43 Maine, 578.

3. The direction to the officer in the plaintiff's writ against Marsh was defective and insufficient. There was no judgment of Court adjudging a lien on the logs in favor of the plaintiff. Nor does the execution run against the logs specifically. These defects are fatal. *Redington* v. *Frye*, before cited; *Cunningham* v. *Buck*, 43 Maine, 455; *Perkins* v. *Pike*, 42 Maine, 141.

The opinion of the Court was drawn up by

MAY, J.—If there was a sufficient direction in the plaintiff's writ against Marsh to authorize the attachment of the logs, masts and spars, upon which the plaintiff claims to have a lien, they being the property of Rufus Dwinel; and if said Dwinel had the necessary legal notice of the pendency of that suit, that he might appear and show cause why the plaintiff should not have judgment as upon a lien claim, of which we give no opinion; still, it appears that no lien judgment was in fact rendered, the only judgment being against the defendant Marsh, in the same manner as if no lien had been

claimed. It is not apparent, from the record, that any notice was taken by the Court of any such claim. The validity or invalidity of the lien should have appeared in the judgment of the Court. Such a judgment may follow the brief statement or other pleadings of the claimant, if he appear, or, if he does not appear after notice, it may be made up as in other cases upon a default.

No such judgment appearing of record, the defendant cannot now be estopped from showing that the lien did not, in fact, exist; or, if it ever existed, that it has been lost. The reason why the owner of such property, alleged to be subject to a lien, may be notified, is that the question of lien may be settled in the same suit wherein the attachment is made. The want of such notice vitiates the lien, if any existed. *Redington* v. *Frye*, 43 Maine, 578. And, for the same reasons, a judgment touching the validity of the lien, whether the general owner of the property appear or not, is absolutely necessary. In the case of *Redington* v. *Frye*, just cited, it is said by CUTTING, J., "that the defendant having appeared and defended, or having had the notice and neglected, the lien judgment is conclusive upon him and his property to which the lien was alleged to have attached." In the case before us, there being no lien judgment, the lien is lost; and, under such circumstances, the defendant is excused for not keeping the property attached, and for not selling it upon the execution, or producing it for that purpose.

It further appears that the execution against Marsh was in common form, containing no direction to the officer other than to satisfy it out of the goods, chattels or lands of the said debtor, and for want thereof, upon his body. It contains no allusion to the logs, masts or spars, which are the subject of this controversy. They could not therefore have been legally seized by virtue of it. *Cunningham* v. *Buck*, 43 Maine, 455. For this reason, also, the attachment was lost; and the defendant, even if the lien had continued to exist, was justified in his neglect to make sale of the property upon the execution, and for any official neglect in not keeping it for that purpose.

The writ, as now amended, contains a count for not return-

ing the execution according to its direction. The writ, as originally drawn, was very imperfect. It sets forth, in substance, that the defendant Marsh was indebted to the plaintiff for personal services upon the lumber in controversy; that it was sued out to secure his lien claim thereon; that it was directed to, and placed in the hands of the defendant, as sheriff of Penobscot, for service, and by him was duly served by an attachment of the lumber, and returned into court; and that judgment thereon was duly rendered in his favor; and then alleges that neither the defendant or any of his deputies, for whose defaults he is answerable, did retain and keep the said logs, masts and spars, for the space of thirty days after the rendition of said judgment, to the end that the same might be taken on execution to satisfy said judgment, the same being no otherwise satisfied within that time.

By the amendment, the plaintiff was allowed to allege a new breach of duty, to wit, that the defendant never returned said execution. To the allowance of this amendment, the defendant seasonably excepted, and the question now is, whether it was within the authority of law to allow it.

The rule of law undoubtedly is, that where an intended cause of action is defectively set forth, and yet so as clearly to be distinguished from any other cause of action, in the manner it would be if the declaration was perfect, then the amendment may properly be allowed. *Pullen* v. *Hutchinson,* 25 Maine, 249. In the case before us, we think it is apparent that the cause of action, and the only cause, originally set forth in the writ, was the neglect of the defendant to keep the property attached for the satisfaction of the judgment upon the execution. Not the slightest reference is made to any other neglect. So far from being alleged in any manner that the execution had not been returned, the original count did not even allege that one had been obtained. The amendment was improperly allowed. *Exceptions sustained, and*
*Plaintiff nonsuit.*

TENNEY, C. J., and RICE, APPLETON, CUTTING, and GOODE-
NOW, JJ., concurred.