## JACOBS v. KNAPP & A.

By the principles of the common law, a man who has the lawful possession of a thing and has expended his money or labor upon it, at the request of the owner, has a lien upon the property and a right to retain possession of it until his demand is satisfied.

This lien is in the nature of a pledge by the owner of the property to the party with whom he contracts for labor to be bestowed upon it; but it is a personal right and interest, which can only be created by the owner or by his authority. A sub-contractor, or any servant of the person entitled to the lien, acquires no interest in the property by reason of the qualified rights or interest of his employer.

Under § 14, ch. 125, Gen. Stat., which provides that "any person who labors at cutting, hauling, or drawing wood, bark, logs, or lumber, shall have a lien thereon for his personal services * * * to continue sixty days after the services are performed, and may be secured by attachment," such lien is limited to the party, alone, who contracts with the owner of the property upon which the labor of the contractor and all his sub-contractors or servants is expended.

A statute providing for the enforcement of a laborer's lien by an action against the person or property of a party between whom and the plaintiff no privity of contract ever existed, is unconstitutional.

ASSUMPSIT, for services in hauling wood to the railroad station at Warren Summit, in Feb., 1869. The return showed an attachment, March 30th, 1869, of certain wood near Warren Summit, "it being to secure a lien upon the same." Plea, the general issue.

It was agreed that the wood attached belonged to the defendants; that one Fifield contracted with the defendants to haul the wood to Warren Summit; that Fifield employed the plaintiff to haul it, and that the plaintiff did haul it; that the defendants did not expressly or impliedly contract with the plaintiff, (unless such contract can be implied under section 14, chap 125, Gen. Statutes,) and that the defendants did not, either expressly or impliedly, authorize Fifield to bind them to the plaintiff. The plaintiff based his claim to recover, solely upon the statute above referred to. Subject to exception, the court, *pro forma,* directed a verdict for the defendants.

Motion to set aside the verdict.

*Chapman,* with whom were *C. W. & E. D. Rand,* for the plaintiff.

Sections 14 and 15, chap. 125, General Statutes, are distinct from and have no connection with sec. 11 of the same chapter, and its construction must be independent of sec. 11. It was enacted at a different time, and for a different purpose and object. In the title and act of 1866, when the provision was made from which section 14, as it now stands, was derived, and for which it was substituted, no reference was made to the act of 1861,—that is, section 11,—by way of amendment or otherwise. The commissioners, it seems, saw fit to enlarge the act of 1866 by extending its provisions to wood and bark. Section 14 standing thus, as a distinct provision, it is immaterial who the contracting parties may be. The object in this provision was to secure the workman for his personal services, and put the party on whose

property the labor is performed upon his guard so that no wrong or injustice shall be done to the laborer; and to this end, pledges the property wrought upon to the laborer, for his payment, to such an amount as he may prove himself entitled. If the amount of the price of the labor is not agreed upon by the workman and the owner, who is the only one obligated to pay the bill, in order to discharge the lien, then it must be adjudicated; and in the adjudication the owner must be a party. None but the owner and workmen are interested in the adjudication. No one but the owner is interested to redeem the property. No one but the owner and workman is interested in the question whether any services at all have been performed by the claimant. All these interests are with the owner, and before the property can be finally disposed of the owner may be heard in some form of procedure or other. The obligation and liability of the owner arises or is created upon the performance of the services, and continues for a limited time, within which an attachment must be made or the liability of the owner ceases. This statute creates a liability of the owner to the party performing the services. If a liability to pay money arises, then is there not an implied promise to pay? If so, then is not assumpsit the proper remedy to enforce the payment? If the amount is not paid, the defendant takes the consequences of a levy on his property, which, however, he may redeem before sale on execution by the payment of the claim. The property is pledged to him as a security to respond a judgment, and may be held by the workman, against the rights or power of the owner to dispose of it before attachment, the attachment being made within the proper time. This lien is not in the nature of a penalty or forfeiture, and the remedies and mode of procedure prescribed in such cases are not required here. The workman's lien and the owner's liability are simultaneous and run together: the right is secured and the liability continued by attachment. In order that an attachment may be made, there must be a process, and, in cases of this character, an original process.

The process raises an issue in some form or other between the workman (claimant) and the owner. When special liens, or liens for the protection of particular individuals or classes, are created by statute, the statute usually prescribes the form and manner of procedure in prosecuting and enforcing such lien. 3 Parsons on Contracts 276. The mode here prescribed is *by attachment.* An attachment then must be made, and the form of process to be adopted should be such as is most consistent with the rules of law and practice and with reason, and the most simple and feasible. The plaintiff contends that assumpsit against the owner who has the benefit of the services (the process setting forth the services performed and on what they are performed, the amount claimed, and showing the property held and the purpose for which it is held by the attachment) *is the best form*, and most in harmony with the principles of the common law and most in accordance with common sense. We submit that the legislature contemplated this form of procedure,—to wit, making the owner of the property attached a party to the suit; and that secs. 14 and 15 authorize

this form of procedure.   This proceeding gives the party interested to defend against the claim set up, and the party on whom the liability rests, all the notice required by any statute or by the rules of common law in matters of liens in general.

The issue is between the owner and the workman ; and why should they not be the parties to the suit or process ?   A judgment against the owner for the amount found due the workman, and a sale on execution, of the property specifically returned on the writ, would seem to be regular and in all respects just, and just the course of procedure contemplated by the legislature in this provision of the statute.

To sue one party and attach the property of another to respond the judgment would seem to require a process and form of procedure irregular, contradictory, confusing, and absurd.   The officer must be directed to attach the property of A B, and summon C D to appear, &c., and equally ridiculous must be the direction in the execution recovered in such case and the officer's return thereon.   The construction contended for by the plaintiff works no hardship to the owners and does them no injustice.   It creates a liability on the owners to pay the party performing the services and conferring the benefit, and binds them no further than they ought to be bound.

*Putnam, Bryant, H. & G. A. Bingham,* for the defendants.

We say this action cannot be maintained.   1.  Because the plaintiff had no contract with the defendants, and the defendants never knew him in the contract which they made with Fifield for drawing this wood.   Had the defendants neglected to pay Fifield for drawing it, then he could have attached the wood within sixty days after the services were performed, and have held it for the satisfaction of his debt against all prior attachments, and probably against a mortgage.   But Fifield had no interest in the wood, which his creditors could attach and hold against the owners of it.   *Lovett* v. *Brown,* 40 N. H. 511.

This we submit is the construction of sec. 11, ch. 125, Gen. Statutes, and is the common law in relation to mechanics' liens, and which has been incorporated into the statutes of nearly every State in the union, and accepted and adopted by the courts of the several States,—to wit, *that the right of lien must be given by one having the right of property.* *Hollingsworth* v. *Dow,* 19 Pick. 228 and 230 ; *Lovett* v. *Brown,* 40 N. H. 511, and cases there cited ; 2 Kent's Com. 635, notes d. 1 and 2 ; 3 Parsons on Contracts 241.   Fifield had no right of property.   Where one who had contracted to finish a machine employed a mechanic, without the knowledge of the owner, to perform the work, disclosing to him the contract with the owner, it was held that such mechanic did not acquire a lien in his own right for his labor upon the machine as against the owner, although the owner knew he was performing the work while it was in progress.   *Hollingsworth* v. *Dow,* 19 Pick. 228 before cited.   This being the law relating to mechanics' liens, the question arises, Is there anything in sec. 14, ch. 125, of the Gen. Statutes, which gives to the persons referred to in that section any rights incon-

sistent with the general law in reference to liens ?   We submit there is not, and least of all, such rights as are contended for by the plaintiff in this suit.   We contend that the legislature, in passing the act of 1866, intended to extend the same rights and privileges to the persons therein mentioned, that were previously enjoyed by mechanics and others, and no other rights or privileges.   Any other construction is inconsistent with the general provisions of the statute, and tends to subvert rather than enhance the ends of justice.   If the court holds that actions can be maintained, commenced as this was, and that sub-contractors have liens which they may enforce against the original owners, then there is no safety for parties doing this kind of business. For instance, suppose Fifield, after making his contract with the defendants, had sub-let *all* of the work at rates so that the liens would amount to more than the entire marketable value of the wood.   Can it be said that the defendants would be obliged to pay up and discharge these liens, at such ruinous prices, before they can have their property? The mere statement of such a position is a perfect answer to it. 2.  But if it be held that sub-contractors may have a lien which they can enforce against the original owners, under the above section, this action cannot be maintained, as the writ sets up a contract with the defendants, when the case finds that no such contract exists or ever did exist, unless such contract can be implied under sec. 14, ch. 125, of the Gen. Statutes.   See 1 Chitty's Pleading 112.   The plaintiff says in his brief, " the form of process to be adopted should be such as is most consistent with the rules of law and practice," &c., &c.   But we submit that the process contended for by the plaintiff in this suit is entirely *inconsistent* with the rules of law and practice.   Neither can we discover the inconsistency or absurdity in adopting some other process mentioned in the plaintiff's brief.   If Fifield is indebted to the plaintiff he should commence his suit against *him,* and not against some one else whom he never knew or had any business connection with whatever ; and if the wood can be held to satisfy any such claim as is here set up by the plaintiff, we say it cannot be held by any other process than one against Fifield.

Had the suit been thus commenced, and the defendants afterwards have taken the property, the officer might have maintained trespass or trover against them, provided it be held that sub-contractors have a lien as against the original owners.

FOSTER, J.   The decision of the questions raised by this case depends upon the construction to be given to the 14th section of the 125th chapter of the General Statutes.

That statute provides that " any person who labors at cutting, hauling, or drawing wood, bark, logs, or lumber, shall have a lien thereon for his personal services, which lien shall take precedence of all other claims except liens on account of public taxes, to continue sixty days after the services are performed, and may be secured by attachment."

At the common law the lien of a mechanic, manufacturer, or other laborer " is neither a *jus ad rem* nor a *jus in re :* that is to say, it is

not a right of property *in* the thing itself, or a right of action *to* the thing itself;" but it is a security, derived from a " general principle of the common law, which gives to a man who has the lawful *posses-sion* of a thing and has expended his money or his labor upon it, *at the request of the owner*, a right to retain it until his demand is satisfied." Story on Agency, §§ 352–3 ; *Scarfe* v. *Morgan*, 4 Mees. and Welsb. 283 ; *Copley* v. *O'Neil*, 1 Lansing 218. The lien of a workman at common law belongs strictly to the person contracting to do the work or service, and not to the sub-contractors, or persons employed under him. Story on Bailments, § 440 ; *Hollingsworth* v. *Dow*, 19 Pick 228. It is a qualified ownership in the nature of a *pledge ;* and the security attaches only to the debt and obligation created by, and due from, the *owner* of the property upon which the labor is expended,—the person against whom the pledge is claimed,—unless the owner have, by some express act or by necessary implication, pledged or authorized another to pledge his property for the debt of another. In the present case, no such authority was given by the defendants to Fifield ; and, by the sub-contract of Fifield with the plaintiff, the defendants did not become the debtors of the plaintiff, though the work was done on the defendants' property, unless the common law relationship and obligations of the parties are so entirely changed by the statute as to create the *involuntary* relationship of debtor and creditor, and raise by implication a promise contrary to the fact. *Hollingsworth* v. *Dow*, 19 Pick. 228 ; *Case of an Hostler*, Metcalf's Yelv. 67, and notes ; *Phelps* v. *Sinclair*, 2 N. H. 555 ; *Hodgdon* v. *Waldron*, 9 N. H. 68.

A lien grows out of a contract, express or implied ; and without such contract there can be nothing to support the lien. Thus there can be no lien in favor of a party who has wrongfully obtained possession of the property.

" The right of lien is also to be deemed waived, when the party enters into a special agreement inconsistent with the existence of the lien, or from which a waiver of it may fairly be inferred ; as when he gives credit, by extending the time of payment, or takes distinct and independent security for the payment. The party shows by such acts that he relies, in the one case, upon the personal credit of his employer ; and, in the other, that he intends the security to be a substitution for the lien." 2 Kent's Com. *638.

And although it has been held that a lien is not discharged by taking the employer's note for the amount due for the labor bestowed upon the work thus pledged, yet in a recent case in Illinois it was held that where one of the members of a firm owned a lot, and purchased lumber to improve the same, and the firm note was given in payment, that was such additional security as discharged the lien. Am. Law Register for June, 1870, p. 386.

A lien, as we have seen, is a *personal* right, as well as an interest which can only be created by the owner, or by his authority. If Fifield, by virtue of his contract with the defendants, had a lien upon the wood, the plaintiff could acquire no lien upon the property *through him.* The plaintiff, as a creditor of Fifield, could not attach and hold, as against

the owner, at the common law, the property in which Fifield had but the qualified interest of a pledgee.     *Lovett* v. *Brown*, 40 N. H. 511. Neither is a lien for the price of labor performed on an article assignable.  *Bradley* v. *Spofford*, 23 N. H. 447.   While the law is careful to promote, by the security of liens, good faith and fair dealing between the laborer and the owner of the property upon which the labor is expended, it deems it contrary to good policy to encumber and embarrass trade and manufactures by any relaxation of the principles applicable to the doctrine of liens, such as would encourage or permit conflicting claims to be interposed, or such as would render the respective rights and obligations of bailer and bailee uncertain and doubtful.

The statutes of liens have enlarged the privileges of the party who, at common law, could only *as bailee* avail himself of the lien, by substituting, in the enumerated cases, attachment of the property for retention of possession; but it would be quite anomalous to regard this process of attachment as applying in favor of a stranger against a party with whom the plaintiff never contracted, and who could in no proper sense be regarded as an attaching *creditor*.

But does the statute of 1866 so change the common law as to create the duties, rights, and obligations belonging to the ordinary relationship of debtor and creditor, in a case where there is, but for the statute, no privity of contract?

Such a change would in our opinion be so radical, inconvenient, and often, practically, so unjust, that a construction which would give the statute that effect could only be allowed in a case where the intention of the legislature, in that direction, would seem to be too apparent to be mistaken.   But we are the rather inclined to suppose that, with too little regard for clearness of expression, the *intention* of the framers of the statute, upon which the plaintiff relies, was *only* to extend the provisions of previous statutes (the mechanics-lien law of 1861, Gen. Stat., ch. 125, §11) to another class of laborers.

The terms of the 14th section, " any person who labors at cutting," &c., under the common application of the maxim, " *qui facit per alium facit per se*," are logically and legally applicable to the general contractor, having servants or sub-laborers under him.   This is but the natural construction of the language of the law, and, to hold otherwise and to give to the term " personal services " the prominence which would, in a case like the present, deprive the contractor and creditor of the lien (or at least involve him in a conflict regarding titles), and confer the privilege of such security upon a stranger to the owner and pledger of the property, without notice to the owner and opportunity for him to protect his interests, might, and not unfrequently would, work manifest injustice.

The principles applicable to a contract like that under consideration would apply equally to one *more* complicated, and in many cases would be likely to work inextricable confusion by giving to various persons having no connection with each other and none with the principal,— the owner of the property,—unless by some implied condition of subagency, liens upon the whole property for labor expended upon differ-

ent parts under different contracts, amalgamated into the completed work undertaken by the original contractor. The master-builder, for example, contracts with a brick-maker, who furnishes the bricks. He also contracts with the master-mason; but the latter employs the bricklayer, and perhaps the bricklayer employs the hod-carrier and the plasterer. The master-builder may employ a carpenter; but the latter may furnish and employ the various laborers who do the wood-work of the building. The master-builder may employ the painter; but the latter may have his own servants in his peculiar line of work,—and so on, to the extent of involving, in the same general work, a great variety of contracts and agencies. In such a case, to give not only the master-builder, but also all these various under-workmen, each an independent lien, without preference or precedence, upon the same property, would disastrously embarrass the useful construction of the work.

In short, there would seem to be no practicable rule by which to interpret this statute, other than one which should limit the subsistence of the lien to the party alone who specially contracts with the owner of the property upon which the labor of the contractor and all his sub-contractors is expended.

The general owner in many cases, undoubtedly, contemplates that the work will not be performed by the individual services of the party alone with whom he contracts, and, by necessary implication, gives the contracting party authority to employ such sub-contractors and agents as the necessities of the occasion demand; and, to a certain extent, the relation thus created between the owner and the sub-contractors may be such as to impose upon the former, liabilities to the public for the negligence of the sub-contractors, and even, it may be, for debts incurred, with which the principal, the owner, in fact' had nothing to do; but, for the reasons suggested, we think it would be altogether unsafe to enlarge the application of the common law principles pertaining to the doctrine of liens to which we have adverted.

Therefore we are inclined to the opinion that no such important change was contemplated or should be held to have been wrought by the statute in question.

We find no analogy for such a construction, drawn from the phraseology of the existing statutes of other States. In several States the lien is given by statute to sub-contractors; but never, so far as we have seen, except in one instance (where it was found to be practically void, until a remedy was provided by subsequent legislation), without some special provision applicable to the peculiar condition of the case, calculated and intended to avoid the embarrassments and difficulties which we have suggested. These provisions usually require, by way of proviso, that, if the work is done under contract with the owner, no person who may have done work or furnished materials for such contractor shall have the benefit of the lien, *unless*, within a prescribed time after his employment by the contractor, *he shall give notice to the owner that he is so employed and will claim the benefit of the lien.*

· Such a law as we have indicated and have found in other jurisdictions would perhaps be of public advantage. It would tend to protect

the laborer against the fraud, dishonesty, or insolvency of owners and contractors ; but, if evils exist by reason of the present state of the law, the legislature alone can, and that body most effectually may, provide the remedy.   But it would seem that the legislature has not yet comprehended the evil, if it exists.*

By the express provisions of sec. 9, ch. 125, the lien of laborers on vessels is limited to the general contractor, and is not extended to subcontractors or under-workmen.   The lien of laborers upon buildings is limited in the same manner by sec. 11 of the same chapter ; and we see no reason why the 14th section should receive a construction extending to laborers at cutting, hauling, or drawing wood, bark, logs, or lumber, privileges and benefits greater than are accorded to those who furnish personal labor in aid of the construction of vessels or dwelling-houses.   If the legislature had *intended* to change the law in respect to this peculiar class of laborers, they would have done so by explicit terms, it would seem.   The fact that they have not done so, and that no reason for such a distinction should, as we regard it, be made, is to our minds very strong evidence that such was not their intention.   Their purpose rather seems to have been to extend the benefits of the lien, provided by previous statutes, to another equally meritorious but not more especially deserving class of laborers.

Upon the whole, therefore, we are inclined to the opinion that the lien of laborers in the class to which the plaintiff belongs can attach *only* in case and by virtue of a contract, express or implied, *with the owner* of the property upon which the labor is bestowed ; that if the personal services are rendered upon a different contract with a person other than the owner, or some one expressly authorized by him to bind the latter and create the lien, the laborer must look to his employer alone for such security as he may in all cases demand and require, before engaging in the work.

We have already alluded to the anomaly suggested by these proceedings, whereby the plaintiff, in order to secure a debt against Fifield, the party with whom alone he has contracted (unless by such implication, as we understand, the statute does not require nor warrant), seeks to attach the property of Knapp & Putnam.   He brings his suit upon the common counts, with no claim founded upon any contract to support it ; his declaration is not special, declaring upon a liability of the defendant to the plaintiff, created by implication of the common law or the provisions of the statute ; he gives the defendants no notice of the nature of his claim, and no opportunity to make the defence, which the party contracting with the plaintiff may perhaps properly have ; he does not command the officer to attach the specific property upon which the lien is claimed, but the general property of the defendants ; his writ and suit is not a proceeding *in rem*, or in the nature of a libel ; and, in short, it is a proceeding utterly at variance with all precedent, reason, or authority.

---

* Since this opinion was delivered, the legislature has taken action upon the subject by the enactment of ch. 1, Laws of 1871.

But, although the reasons which we have expressed are to our minds abundantly sufficient to warrant us in holding that this suit cannot be maintained, there is another view of the subject leading to the same result. This view is suggested by the adjudications of the courts in the State of Maine. A statute of that State, passed Aug. 10, 1848,-is in terms almost identical with our statute of 1866. With regard to a laborer's claim to enforce a lien for personal services under the Maine statute of 1848, it was said by APPLETON, J., in *Bicknell* v. *Trickey*, 34 Me. 281, "The rights given by this statute confer on the laborer special privileges, and he must strictly comply with its terms if he would claim the benefit of its provisions. The owner of the lumber may have contracted for its hauling, and may have fully paid the individual with whom such contract was made, yet, by virtue of this statute, the laborers may interpose their claims and assert their liens, and he may thus be compelled to pay twice for the same services."

The manifest injustice of this possibility is avoided by the construction which we have given in this opinion to *our* statute of 1866.

But the court in Maine has undertaken, so far as practicable, to avoid the injustice alluded to in this way : "The proceedings," says APPLETON, J., in *Bicknell* v. *Trickey*, "under this statute are to be viewed in a double aspect. So far as the debtor is concerned, they are *in personam*, and, as against him, the plaintiff may insert any and all claims which by law can be joined ;" that is, in the case then before the court, a claim for personal services upon the particular logs upon which the lien was sought to be enforced, and also a claim for services upon *other* logs. "So far," he continues, "as regards the general owner of the property, and against whom the laborer has no legal claim, when the person with whom he has contracted is other than the owner of the lumber, the proceedings are strictly *in rem*. Without contract, without personal liability on the part of the general owner, the laborer claims to seize his property to satisfy the debt of another. His rights and his position are different from that of the debtor, with whom the contract to labor was made. Now this being a proceeding, so far as concerns the general owner, strictly *in rem*, the laborer's rights under the statute depend upon the special claim thus protected, and upon continuing its identity, as well as that of the property upon which it is imposed. * * No other property is liable except that upon which the lien attaches. * * The identity of claim and of property must co-exist, and must be traceable till the fruits of the judgment have been obtained by a satisfaction of the execution."

Therefore it was held, in various cases, that where the claim against the debtor was in assumpsit upon the common counts, and did not contain an allegation of the lien, and where the order was to attach the general property of the debtor or of the owner of the logs upon which the lien *in some other form* might attach, that the suit was *in personam* and not *in rem*, that the record must govern, that the lien by such general proceedings was either waived or merged and drowned in the gen-

eral claim and could not be sustained; *Cunningham* v. *Buck*, 34 Me. 455; *Lumbard* v. *Pike*, 33 Me. 291 ; *McCrillis* v. *Wilson*, 34 Me. 286; *Redington* v. *Frye*, 34 Me. 578 ; *Johnson* v. *Pike*, 35 Me. 291; *Annis* v. *Gilmore*, 47 Me. 152 ; *Osgood* v. *Holyoke*, 48 Me. 410 ; *Thompson* v. *Gilmore*, 50 Me. 429.

In order to remedy the defects and difficulties so apparent under the Maine statute of 1848, the legislature of that State in 1855 enacted a law in these terms : "In all suits brought to enforce the lien given by the act to which this is additional (the act of 1848), such notice shall be given to the owner of the lumber as the court shall order, and the owner may come into court and defend such suit."

With reference to the law as thus amended, Mr. Justice CUTTING, in *Redington* v. *Frye*, 43 Me. 587, says : "Proceedings *in personam* authorize, on *mesne* process, attachment of the property of the defendant, to respond the exigency of the writ and satisfy the judgment : whereas, proceedings *in rem* only authorize the attachment of the *thing*, and in that particular are in the nature of a libel ; and in suits where the defendant is both the debtor and owner of the property on which a lien is attempted to be enforced, ordinarily no difficulty arises in embracing both proceedings in the same process. And the embarrassment has arisen in a great measure by an erroneous idea that the remedy of the contractor and his sub-contractor is the same : whereas, the former has his security on the goods and estate of his debtor, that is, *in personam*, as well as on the specific property benefited by his labor, which may be *in rem*, and after judgment it is optional with the creditor on which species of property he will levy his execution. In such cases an attachment of the debtor's goods and estate might include the property on which the services were bestowed without any other specific directions to the officer in the writ, for indeed such property would belong to the debtor, subject only to the lien. *   *   But a sub-contractor has no claim against the *owner* of the property : his claim is only against the *property (in rem)*, and the person and property of his employer *(in personam)*. So that in such suits two classes of respondents become interested : viz., the contracting debtor and the *thing* specifically attached, in which the former may appear and defend against the claim on his person and property, and the latter, by its owner, against all lien claims.

"But heretofore, and until the enactment of the statute of 1855, the *res* could not be legally represented in court."

He goes on to speak of the *necessity* of this statute, in order that a party having rights which might otherwise be concluded by a judgment *inter alios*, might be protected by the notice provided for by the supplemental statute.

And he concludes by saying that "before the statute of 1855, it may be questionable how far a party had the constitutional privilege of seizing and confiscating the property of another, in violation of private rights, without an opportunity to be heard," citing *Marsh* v. *Flint*, 27 Maine 479 ; and see also *Bean* v. *Soper*, 56 Maine 298.

These Maine authorities are conclusive to this point, at least, that

under the laws of that State, substantially identical (before 1855) with
our present statute of 1866, the sub-laborer's lien could not be enforced
by any such proceeding as the plaintiff has adopted in this case.

Our legislature has not, like that of Maine, and like those of other
States, and like the act of Congress with reference to mechanics' liens
in the District of Columbia, obviated the *necessity* which required the
adoption of those statutes, to affect the practical application of the lien
laws to the case of sub-contractors.

And if it should be considered that a proper construction of our law
*requires* us to hold that its purpose and intent was to give the lien to
sub-contractors, without such provision or qualification as is afforded
by such laws as the late statute of Maine, we should be inclined to deem
it *not* " questionable " that, in its present form, it is entirely subversive
of the fundamental principle of all free governments, that no person
can be depived of or prejudiced in his property or rights by the judg-
ment of any court, unless he has notice of such proceedings and an
opportunity to defend.

That notice and that opportunity is not accorded by any provision of
law, and is not afforded by any such process or practice as is adopted
in the present case.

So far then as the statute may or must be construed as giving and
enforcing the laborer's lien by an action against the person or property
of a party between whom and the plaintiff there has never been any priv-
ity of contract, it can only be regarded as unconstitutional and void.

Therefore, whether the one view or the other be adopted as the true
one, the result must be a

*Judgment on the verdict.*